In the Matter of Frederick L. LONGLEY, aka Fred L. Longley, and Carol Lynne Longley, aka Lynne Longley, Debtors.

Frederick L. LONGLEY and Carol Lynne Longley, Debtors,

v.

UNITED STATES of America and Internal Revenue Service, Defendants.

Bankruptcy No. B84–00935–Y. Adv. No. 84–0125.

United States Bankruptcy Court, N.D. Ohio.

July 10, 1986.

**238**

Patricia L. Spencer, Warren, Ohio, for debtors/plaintiffs.

Debra L. Stefanik, and William J. Kopp, CTS, Northern Region, Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S., I.R.S.

Thomas L. Corroto, Youngstown, Ohio, Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on competing Motions for Summary Judgment filed by Plaintiff/Debtors, FREDERICK and CAROL LONGLEY ("Debtors"), and by Defendant, UNITED STATES OF AMERICA, INTERNAL REVENUE SERVICE ("the Government"), in the above-captioned adversary proceeding. For the reasons set forth below, the Court grants summary judgment in favor of the Government.

## FACTS

Debtors filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on September 21, 1984. On December 26, 1984, Debtors commenced this adversary proceeding against THE UNITED STATES OF AMERICA and THE INTERNAL REVENUE SERVICE to determine the dischargeability of taxes allegedly due for the 1980 tax year.[1] Debtors also seek to have the Government found in contempt for an alleged violation of the automatic stay and to have the Court award damages therefor. Finally, per the Amended Complaint filed on May 1, 1985, Debtors have requested the Court to determine the amount of tax liability owed by Debtors, if any.

The within Motions for Summary Judgment were filed by the Government and Debtors on October 18, 1985, and January 30, 1986, respectively. From a review of all of the documents on file with the Clerk of this Court, it appears that:

1. Debtors timely filed their tax return for the 1980 tax year on April 6, 1981. The return reflected an adjusted gross income of Seven Thousand, Five Hundred Sixty-Six & 00/100 Dollars ($7,566.00) and a tax liability of Seventy-Three & 00/100 Dollars ($73.00). Applying credits, Debtors requested a refund of Eight Hundred Thirty-One & 00/100 Dollars ($831.00).

2. On March 23, 1983, Debtors executed Form 2848 (Power of Attorney and Declaration of Representative) wherein Debtors designated ROBERT M. BOYLE, C.P.A., and JAMES H. TIMS, C.P.A., as attorneys-in-fact to represent Debtors in tax matters relating to Debtors' 1980 and 1981 income tax liabilities. On November 30, 1983, ROBERT M. BOYLE, CPA, signing as attorney in fact for Debtors, executed Form 872 (Consent to Extend the Time to Assess Tax). This Consent extended the time for assessment of taxes for the 1980 tax year to December 31, 1984.

3. On April 10, 1984, Debtors executed an Internal Revenue Service Form 1902-B (Report of Individual Income Tax Examination Changes) and attached Form 3547 (Explanation of Adjustments). This Report was the result of an Internal Revenue Service audit, and it showed that the Plaintiffs had failed to include over Twenty-Two Thousand & 00/100 Dollars ($22,000.00) in income for the year 1980. The inclusion of the unreported income resulted in an increased tax liability from Seventy-Three & 00/100 Dollars ($73.00) to Five Thou-

---

1. As the government has correctly pointed out, THE INTERNAL REVENUE SERVICE is not a suable entity. Therefore, the Court's references to "the Government" refer only to Defendant, UNITED STATES OF AMERICA.

sand, One Hundred Thirty-Seven & 42/100 Dollars ($5,137.42). The Internal Revenue Service also added a civil fraud penalty in the amount of Two Thousand, Five Hundred Thirty-Two & 21/100 Dollars ($2,532.21), pursuant to Internal Revenue Code Section 6653(b)(1). By signing Form 1902–B, Debtors waived their right to appeal the finding of the Report to the Internal Revenue Service and to contest the proposed assessment in the United States Tax Court. Debtors also consented to the immediate assessment and collection of the amounts due as set forth on Form 3547.

4. Debtors filed their Chapter 7 Petition on September 21, 1984. Thereafter, THE INTERNAL REVENUE SERVICE made a downward adjustment in the figures indicated on Form 1902–B and on December 17, 1984, THE INTERNAL REVENUE SERVICE made a tax assessment against Debtors in the total amount of Ten Thousand, Forty-Seven & 94/100 Dollars ($10,047.94). This amount included Four Thousand, Seven Hundred Thirty-Five & 00/100 Dollars ($4,735.00) in unpaid tax liability; Two Thousand, Three Hundred Sixty-Seven & 50/100 Dollars ($2,367.50) for a civil fraud penalty; Two Thousand, Six Hundred Forty-Two & 44/100 Dollars ($2,642.44) in interest; and Three Hundred Three & 00/100 Dollars ($303.00) in adjustments to the earned income credit claimed by Debtors in their return.

### LAW

There are two dispositive issues presented by these Motions for Summary Judgment:

1. whether the tax assessment of December 17, 1984 violated the automatic stay imposed by 11 U.S.C. Sec. 362; and

2. whether the tax and charges assessed for the 1980 tax year are dischargeable.

### 1. Did the Assessment Violate the Automatic Stay?

The Second Revised General Order No. 2, effective in the Northern District of Ohio, as of January 15, 1982, provides that the

... Internal Revenue Service is hereby authorized to assess tax liabilities (income, estate, gift, excise and employment) shown on voluntarily filed returns, agreed deficiencies/adjustments in such tax liabilities, adjustments in employment and excise tax liabilities with respect to which the debtor/taxpayer fails to lodge a timely protest, agreed penalties asserted under IRC Section 6672 and penalties asserted under IRC Section 6672, with respect to which the debtor/taxpayer fails to lodge a timely protest ...

and that the automatic stay afforded by 11 U.S.C. Sec. 362 is modified in cases before this Court to that extent.

Debtors in this case agreed to the assessment of a tax deficiency when they executed Form 1902–B. Thus, Second Revised General Order No. 2 of this Court is applicable here, and the Court must find that the Section 362 automatic stay was not violated by the December 17, 1984 assessment. Because no violation occurred, Debtors are not entitled to the award of damages.

### 2. Are the Taxes and Other Charges Assessed by the Government for the 1980 Tax Year Dischargeable?

Debtors commenced this adversary proceeding pursuant to 11 U.S.C. Sec. 523(a)(1). That Section provides:

(a) A discharge under section 727, 1141, or 1328(b) of this Title does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or

507(a)(6) of this Title, whether or not a claim for such tax was filed or allowed; (B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax....[2]

11 U.S.C. Sec. 507(a)(7) provides in pertinent part:

(a) the following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(c) (sic) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case....

The dischargeability issue in this case involves the interpretation of the sub-paragraphs of Section 507(a)(7)(A). Debtors argue that since the taxes relate to tax years earlier than three years prior to the filing of the Petition, the taxes are not entitled to priority status under Section 507(a)(7)(A)(i) and are, thus, dischargeable under Section 523(a)(1) and that the Government is precluded from using Sections 507(a)(7)(A)(ii) and (iii) to object to the discharge of the tax claims. In other words, Debtors argue that the failure to meet the terms of Section 507(a)(7)(A)(i) renders Section 507(a)(7)(A)(ii) and (iii) inapplicable. The Government argues, on the other hand, that Section 507(a)(7)(A)(i), (ii), and (iii) are three separate grounds for priority and that the failure of the taxes to fall into the first category does not mean that the other two categories cannot be used to establish priority and, thus, nondischargeability.

The key to the resolution of this issue is the appropriate construction of the word "or" used between Section 507(a)(7)(A)(ii) and (iii). Section 102 of the Bankruptcy Code sets forth rules of construction and provides in pertinent part:

Section 102 Rules of Construction. In this Title—

. . . . .

(5) 'or' is not exclusive....

The legislative history of Section 102(5) states:

Paragraph 5 specifies that 'or' is not exclusive. Thus, if a party 'may do (a) or (b),' then a party may do either or both. The party is not limited to a mutually exclusive choice between the two alternatives.

H.R.REP. NO. 95–595, 95th Cong., 1st Sess. 316 (1977); S.REP. NO. 95–989, 95th

---

**2.** The reference in Section 523(a) to Section 507(a)(6) should have been changed to Section 507(a)(7), as redesignated by Public Law No. 98–353. Despite Debtors' arguments that the Court should strictly construe Section 523(a)(1)(A) and apply post amendment 507(a)(6), which is not in any way related to taxes, we find that we have the authority to correct this legislative oversight. Thus, whether

we apply pre–1984 amendment law or post–1984 amendment law, the reference in Section 523(a)(1)(A) to Section 507(a) would be substantively the same. Since that is the case, we make no ruling on the issue of whether the pre- or post-amendment code applies to this case and will refer to the relevant portion of Section 507(a) as 507(a)(7) for purposes of convenience and consistency.

Cong., 2d Sess. 28 (1978), U.S.Code Cong. & Admin.News 1978 pp. 5787, 6272.

The case of *Easton v. United States (In re Easton)*, 59 B.R. 714 (Bankr.S.D.Ill., 1986), is directly on point on this issue. The court in that case, presented with similar arguments by the parties, found that the subparagraphs of Section 507(a)(7)(A) are not exclusive and that the failure of a tax claim to fall within the scope of subparagraph (i) of Section 507(a)(7)(A) does not preclude the use of Section 507(a)(7)(A)(ii) or (iii) to establish priority and, thus, nondischargeability. We agree with the *Easton* court's analysis and, thus, hold that the failure of a tax to fall under the terms of Section 507(a)(7)(A)(i) does not render Section 507(a)(7)(A)(ii) and (iii) inapplicable.

Secondly, Debtors argue that even if the failure of a tax to fall under the provisions of Section 507(a)(7)(A)(i) does not render Section 507(a)(7)(A)(ii) and (iii) inapplicable, the taxes are, nonetheless, dischargeable. Debtors urge this Court to adopt the construction placed upon Section 523 and Section 507 by the court in *In Re Doss*, 42 B.R. 749 (Bankr.E.D. Arkansas 1984). In that case, the debtors untimely filed their tax return for the tax years 1976, 1977 and 1978 on November 30, 1979. They filed a Chapter 7 petition on July 7, 1982. In determining that the unassessed taxes for the tax years 1976, 1977 and 1978 were not entitled to priority status and were thus dischargeable, the court held that Section 507(a)(6)(A)(iii) (now Section 507(a)(7)(A)(iii)) must be read in conjunction with Section 523(a)(1)(B)(ii), which, by exclusion, discharges taxes for which a late return was filed more than two years before the filing of a petition. In effect, the court held that simply because a tax is a priority tax under Section 507 because it is still assessable does not mean that the tax is automatically dischargeable and that if a debtor files a late return before two years before filing a Title 11 petition (thus taking the tax out of the provisions of Section 523(a)(1)(B)(ii)), the tax is not entitled to priority and is, thus, dischargeable.

We think that Debtors' reliance on the *Doss* case is misplaced. In that case, the debtor had filed a late tax return prior to two years before the filing of his Title 11 petition. Under the terms of Section 523(a)(1)(B)(ii), taxes for which a late return was filed more than two years prior to the commencement of a Title 11 case are entitled to be discharged. In determining that the taxes were dischargeable, the *Doss* court held that Section 507(a)(6)(A) contained its own exclusions; namely, taxes of a kind specified in Section 523(a)(1)(B), and that merely because a tax was still "assessable" as of the date of the filing of the Title 11 petition did not mean that a tax excluded from the nondischargeability provision of Section 523(a)(1)(B)(ii) was, nonetheless, nondischargeable under Section 507(a)(6)(A)(iii).

The instant case is factually distinguishable from *Doss* in that here, Debtors did not file a late tax return for the 1980 tax year. Therefore, the two-year limit found in Section 523(a)(1)(B)(ii) has no bearing on the decision in this case. The tax in this case is not of a kind found in Section 523(a)(2)(B), since the return was not filed late. Thus, the tax is not excluded from the provisions of Section 507(a)(7)(A)(iii); and, if it was assessable after the commencement of this Chapter 7 case, it is entitled to priority under Section 507(a)(7)(A)(iii) and is nondischargeable under Section 523(a)(1)(A).

Debtors argue that the foregoing construction of Section 507 and Section 523 penalizes honest taxpayers who file their tax returns timely since, under the holding of the *Doss* case, if Debtors would have filed their 1980 tax return late, the tax debt would be dischargeable. Indeed, if the *Doss* case is correct law, Debtors' argument may be well-founded. However, we need make no ruling on the propriety of the *Doss* decision, since it is factually distinguishable from the instant case. We hold that if the taxes in question here were "assessable" after the commencement of this Chapter 7 case, they are entitled to priority under Section 507(a)(7)(A)(iii) and

are, thus, nondischargeable under Section 523(a)(1)(A).

Our holding is consistent with the legislative history surrounding Section 507 and Section 523. The Committee Report to Section 523 states:

The House amendment retains the basic categories of nondischargeable tax liabilities contained in both bills, but restricts the time limits on certain nondischargeable taxes. Under the amendment, nondischargeable taxes cover taxes entitled to priority under Section 507(a)(6) of Title 11 and, in the case of individual debtors under Chapters 7, 11, or 13, tax liabilities with respect to which no required return had been filed or as to which a late return had been filed if the return became last due, including extensions, within two years before the date of the petition or became due after the petition, ...

124 CONG.REC. H 11, 113–114 (Sept. 28, 1978); S 17,430–1 (Oct. 6, 1978). Thus, a reading of the Report shows that taxes entitled to priority under Section 507(a)(7) are nondischargeable and, *in addition,* taxes for which a late return was filed within two years prior to the commencement of the Title 11 case are nondischargeable.

Further, despite Debtors' arguments, there is no indication that Congress intended to limit nondischargeability to taxes owed for tax years prior to three years before the filing of a Title 11 petition. To the contrary, the Senate Report to Section 507 states:

The sixth priority category also includes taxes which the tax authority was barred by law from assessing or collecting at any time during the 300 days before the petition under Title 11 was filed. [Sec. 507(a)(7)(B)(ii)]. In the case of certain federal taxes, this preserves a priority for tax liabilities for years more than three years before the filing of the petition where the debtor and the Internal Revenue Service were negotiating over an audit of the debtor's returns or were engaged in litigation in the tax court. In such a situation, the tax law prohibits the Service's right to assess a tax deficiency

until 90 days after the Service sends the taxpayer a deficiency letter or, if the taxpayer files a petition in the Tax Court during the 90–day period, until the outcome of the litigation.

S.REP. NO. 95–989, 95th Cong., 2d Sess. 68–73 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

The Committee Report to Section 507 reiterates that:

Third. Income and gross receipts taxes not assessed before the petition date but still permitted, under otherwise applicable tax laws, to be assessed. Thus, for example, a pre-petition tax liability is to receive six priority under this Rule if, under the applicable statute of limitations, the tax liability can still be assessed by the tax authority. This Rule also covers situations referred to in [Sec. 507(a)(7)(B)(ii)] of the Senate amendment where the assessment or collection of a tax was prohibited before the petition pending exhaustion of judicial or administrative remedies, except that the House amendment eliminates the 300–day limitation of the Senate bill.

124 CONG.REC. H 11, 112 (Sept. 28, 1978); S 17,428 (Oct. 6, 1978).

Thus, it appears that as long as a tax is still "assessable" as of the petition date under the applicable statute of limitations or by agreement of the parties, it is entitled to priority and is, thus, nondischargeable, even though the taxes may relate to tax years prior to three years before the filing of the Title 11 petition. *See In re Tresiter,* 52 B.R. 735 (Bankr.S.D.N.Y.1985). Any other reading would render Section 523(a)(1)(A), and its reference to Section 507(a)(7)(A)(iii), meaningless. If any inequity results from this construction, we feel that it is Congress's duty to correct it, since we cannot and will not write the law. Further, we doubt that any unfairness results in this case, for we note that had Debtors' representative not consented to extend the time for assessment, the taxes would not have been "assessable" after the commencement of the Chapter 7 case and

would have, in the absence of any other evidence, been dischargeable.

Debtors argue that the Court should refrain from making summary disposition of this case because whether a tax is "assessable" is an issue of fact to be decided after a hearing on the merits. We disagree. Whether a tax is "assessable" is a matter of law. Debtors, through their representative, consented to extend the time for assessment. By doing so, the statute of limitations was kept open to December 31, 1984. Under the Second Revised General Order No. 2, this Court has modified the automatic stay to allow for the assessment of taxes after the commencement of a Title 11 case in this Court. We hold that, as a matter of law, the tax in question was "assessable" after the commencement of the case and is, thus, nondischargeable under the provisions of Section 523(a)(1)(A) and Section 507(a)(7)(A)(iii).

Debtors finally argue that even if the Court finds, as we have, that the taxes in question here are nondischargeable, the Court should, nonetheless, find that the civil fraud penalty and the revision in the earned income credit (REV EIC) are dischargeable.

At the outset, we determine that the Three Hundred Three & 00/100 Dollar ($303.00) REV EIC is nondischargeable. The earned income credit as originally claimed by Debtors on their 1980 tax return resulted in a dollar-for-dollar reduction in the amount of tax owed. The REV EIC, as claimed by the IRS, was the result of an audit whereby the IRS determined that the credit claimed by Debtors was erroneous. Thus, the IRS determined that the tax should be increased, dollar for dollar, to the extent of the error. It thus clearly falls under the provisions of Section 523(a)(1)(A) and Section 507(a)(7)(A)(iii) and is, therefore, nondischargeable.

We also determine that the amount owed for the civil fraud penalty is nondischargeable. Section 523(a)(7) provides that:

(a) a discharge under Section 727, 1141, or 1328(b) of this Title does not discharge an individual debtor from any debt—

.     .     .     .     .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

(A) relating to a tax of a kind not specified in paragraph 1 of this subsection; or

(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition. . . .

The Committee Report to Section 523 states:

The House amendment also adopts the Senate amendment provision limiting the nondischargeability of punitive tax penalties, that is, penalties other than those which represent collection of a principal amount of tax liability through the form of a 'penalty.' Under the House amendment, tax penalties which are basically punitive in nature are to be nondischargeable only if the penalty is computed by reference to a related tax liability which is nondischargeable or, if the amount of the penalty is not computed by reference to a tax liability, the transaction or event giving rise to the penalty occurred during the three-year period ending on the date of the petition.

124 CONG.REC. H 11, 113–14 (Sept. 28, 1978); S 17,430–1 (Oct. 6, 1978).

In *Carlton v. Internal Revenue Service, (In re Carlton)*, 19 B.R. 73 (D.N.M.1982), the district court for the District of New Mexico held that tax fraud penalties assessed in relation to a tax specified in Section 523(a)(1) are nondischargeable. This holding was followed by the court in *Gerulis v. Internal Revenue Service (In re Gerulis)*, 56 B.R. 283 (Bankr.D.Minn.1985). We have found no cases holding to the contrary with regard to the specific instance of civil fraud penalties assessed by the IRS.

Because the civil fraud penalty in question here was assessed in relation to a tax

specified in Section 523(a)(1), we hold that it is nondischargeable.

In their Amended Complaint, Debtors have requested the Court to determine the amount of their tax liability on the basis that the amount assessed is improper. Because that issue could more appropriately be dealt with by the Court upon an objection to the claim of the IRS, Count Two of Debtors' Complaint is hereby dismissed without prejudice.

The taxes, interest, penalties, and REV EIC relating to the 1980 tax year are determined to be nondischargeable. Summary judgment is rendered in favor of the Government and against Debtors.

An appropriate Order shall issue.

IT IS SO ORDERED.