In re Robert L. CRIST and Linda S. Crist, Debtors.

Robert L. CRIST and Linda S. Crist, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 86–01450D.
Adv. No. 87–0084D.

United States Bankruptcy Court, N.D. Iowa.

Jan 29, 1988.

Dennis Naughton, Dubuque, Iowa, for plaintiffs.

Seth Farber, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OF OPINION AND ORDER RE: DISCHARGEABILITY AND ORDER

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the Court is a complaint filed by Robert L. Crist and Linda S. Crist (Debtors) to determine the dischargeability under 11 U.S.C. section 523(a)(1) of certain federal personal income tax liabilities and to determine the extent of their liability, if any, under 11 U.S.C. section 505. A hearing was held on October 14, 1987 and the matter was submitted by Order of same day to the undersigned for consideration. The Court now issues this ruling which shall constitute Findings and Conclusions as required by Bankr.R. 7052. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(I).

### I.

Prior to filing a Chapter 7 petition in bankruptcy on June 16, 1986, Debtors were trying to resolve 1981 and 1982 tax matters with the Internal Revenue Service (IRS). Personal returns for Debtors for both years were prepared and timely filed by their accountants in the Maquoketa, Iowa office of Dee Gosling and Company (Maquoketa Accountants). IRS questioned the 1981 return for *inter alia* a capital loss carryback from a phonograph record distribution investment which resulted in a large deduction. Mr. Crist testified that he was advised by the agent who sold the record investment to him not to consent to an extension of the assessment period for the 1981 tax year. He further testified that he understood that the tax problem with this record distribution investment would be handled on a national level and that his Maquoketa Accountants were working on it.

IRS questioned the 1982 return for *inter alia* an investment credit carryback from a hog farming venture into which Debtors entered for tax benefits. Deb Shanku of IRS first contacted Mr. Crist on this 1982 matter in the fall of 1984. He directed her to his Maquoketa Accountants. Mr. Crist later met with the Maquoketa Accountants on this and other matters. John Berge, a Certified Public Accountant, with Dee Gosling and Company in its Clinton, Iowa office was assigned to work on the 1982 matter.

By memo of August 4, 1984, Berge asked Debtors to sign an IRS Form 2848 which would give Berge power of attorney for 1982 tax matters. No mention of any other year was made in the memo or on the form. Debtors signed the form on August 7, 1984 and it was received by the IRS on August 13, 1984.

By letter of September 6, 1984 to the Debtors, Berge discussed his review with IRS of two of Debtors' tax matters—the farming venture and a corporate matter involving Crist Construction. There was no mention in the letter of the 1981 tax year dispute concerning the record distribution investment. However, Berge requested powers of attorney for the years 1975 through 1983 to cover the years affected by carrybacks from the adjustments discussed with IRS and provided Debtors with two new IRS Forms 2848. These forms were signed by Debtors on September 18, 1984 and received by IRS on September 24, 1984.

By memo of October 2____,[1] 1984, Berge provided Debtors with two IRS Forms 872–A, "Special Consent to Extend the Time to Assess Tax" (Special Consent). The memo was captioned "Extension 1981 Tax Return [next line] Forms 872–A." Berge explained that the Special Consents, "do not agree to any tax liability they merely extend the statute of limitations which is needed pri-

1. The date on the Court's exhibit is not fully shown.

marily because of the Master Recording court case." Debtors did *not* sign and return the two Special Consents for the 1981 tax year. Debtors and Berge had no further contact or conversations about the forms. By letter of December 12, 1984, Guy Hoard, an IRS agent, sent two Special Consent forms to Debtors for tax year 1981. The letter did not explain the forms or identify a need for Debtors to sign them. Debtors did not sign and return either form or have any further contact with the IRS on the issue.

Berge and Hoard subsequently discussed the Special Consents. A Special Consent covering the 1981 tax year was signed by Berge on behalf of Debtors and dated January 8, 1985. It was received by the IRS and signed by an IRS group manager on January 9, 1985.

Berge testified that he thought a waiver of the applicable statute of limitation via a Special Consent was in Debtors' best interest so that their appeal rights would be preserved. Berge, however, testified that he was unaware that Hoard had contacted Debtors directly on this matter.

Mr. Crist testified that he did not contact either the IRS or Berge concerning his desire that a Special Consent not be executed. He further stated he had no knowledge that Berge had executed the form on their behalf until Debtors began to prepare their bankruptcy petition.

On January 27, 1986, Debtors signed a Special Consent for tax year 1982. Dennis Naughton also signed it on February 4, 1986 as their representative.[2] It was received by the IRS appeals office in Des Moines on February 7, 1986 and signed and dated by an IRS appeals officer on February 7, 1986.

Crists filed their petition in bankruptcy on June 16, 1986. A discharge was entered October 7, 1986. Final Decree was entered December 10, 1987.

By two certified letters dated December 19, 1986, IRS informed Robert Crist that the IRS had determined deficiencies for tax years 1975, 1976, 1978, 1979, 1981 and 1982. The letters explained what options were available to Debtors if they desired to contest the deficiencies while they are in bankruptcy.

By complaint of March 12, 1987, Debtors seek a determination of the dischargeability of the IRS claims. Debtors assert the following:

(1) Under *Doss v. United States*, 42 B.R. 749 (Bankr.E.D.Ark.1984), and pursuant to 11 U.S.C. section 507(a)(7)(A)(iii) and 11 U.S.C. section 523(a)(1)(B), these tax claims are not priority claims and, therefore, are dischargeable;

(2) No valid extension of the period of time in which a tax for 1981 may be assessed was executed by Debtors;

(3) If Debtors' attorney-in-fact could execute a Special Consent [IRS Form 872–A] for 1981 on Debtors' behalf, IRS is estopped from reliance thereon because IRS made material misrepresentations to Debtors on which Debtors relied;

(4) If the Special Consents for 1981 and 1982 are valid, they are valid only for assessment of 1981 and 1982 taxes;

(5) If the Special Consents for 1981 and 1982 are valid, IRS has failed to assess the taxes within sixty days after the Notice of Deficiency as stated on the Special Consent form 872–A or within 150 days thereafter as stated by law and so the right to do so has expired.

IRS counters that the statute of limitations for both 1981 and 1982 were extended by valid executions of Special Consents. Further, IRS notes that the assessments for 1975, 1976, 1978 and 1979 tax years involve carrybacks from the 1981 tax year and, therefore, the statute of limitations for those years has not yet run under 26 U.S.C. sections 6501(j) and 6501(k). Finally, IRS states the taxes in question are or

---

**2.** A Power of Attorney (Form 2848) for individual income tax Form 1040 for the years 1975 through 1984 which designated Dennis J. Naughton (counsel here) and Paula M. Stenlund as Debtors' representatives was apparently signed by Debtors and filed with the IRS on June 5, 1985. However, a copy of this form signed by the Debtors was not placed in evidence. *See* Plaintiff's Exhibit 5.

may be assessable after the commencement of Debtors' bankruptcy and, accordingly, are not dischargeable under 11 U.S. C. section 507(a)(7)(A)(iii).

## II.

■ The non-dischargeability of certain taxes is set forth under 11 U.S.C. section 523. It provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—

(1) for a tax ...—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]

11 U.S.C. section 523(a)(1). In other words, if a tax claim is of a type described above, it is non-dischargeable. Since Debtors' tax returns for all years were timely filed and there is no claim of fraud (subparagraphs (B) and (C)), the Court must examine section 523(a)(1)(A), and consequently, the priority of claims established under sections 507(a)(2) and 507(a)(7), to determine whether IRS's claims are therein described.

Section 507(a)(2) establishes a second priority of unsecured claims in the ordinary course of business in an involuntary case. It is clearly inapplicable here.

Section 507(a)(7)(A) [3] establishes a seventh priority for allowed unsecured claims of governmental units, only to the extent that such claims are for:

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, commencement of the case[.]

---

**3.** While neither party has questioned whether section 507(a)(7) applies, the Court notes and concurs with the following:

The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, was enacted July 10, 1984 and became effective for cases after October 7, 1984. It added a new category of priority claims to section 507 of the Bankruptcy Code. Pub.L. No. 98–353 at section 350. As a result of this revision, section 507(a)(5) and section 507(a)(6) were renumbered as section 507(a)(6) and section 507(a)(7). *Id.* This version of section 507 is applicable to the instant case. *Id.* at section 523(a). However, the cross reference to former section 507(a)(6) contained within section 523(a)(1)(A) declaring priority debts of this kind to be nondischargeable was not renumbered to reflect this designation.

On October 27, 1986 the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 was enacted, and became effective thirty days after the date of enactment. Bankr.Serv. (L.Ed.), *Current Awareness Alert,* Nov., 1986 at 78 and H.R. 5316, 99th Cong., 2d Sess. section 302(a), 132 Cong.Rec. H5982 (daily ed. Aug. 12, 1986). Section 523(a)(1)(A) was amended to correct the cross reference to section 507(a)(6), changing it to section 507(a)(7). 3 *Collier on Bankruptcy,* paragraph 523.06[2] at 523–19 n. 3b (15th ed. 1987). The failure to redesignate this cross reference in the 1984 amendments was merely an oversight, and the proper reference in section 523(a)(1) should be to section 507(a)(7). *Easton v. United States (In re Easton),* 59 B.R. 714, 716 n. 1 (Bankr.C.D.Ill. 1986).

*Edwards v. I.R.S. (In re Edwards),* 74 B.R. 661, 662–63 (Bankr.N.D.Ohio 1987).

11 U.S.C. section 507(a)(7)(A). Subdivision (i) is inapplicable since each of the returns for the tax years in question was due more than three years before Debtors' petition was filed in June of 1986. Moreover, IRS concedes that section 507(a)(7)(A)(ii) is inapplicable under the facts presented since the tax liabilities for those years were not assessed within 240 days before Debtors' petition in bankruptcy. Therefore, the Court must determine whether section 507(a)(7)(A)(iii) establishes a priority for these tax claims and, therefore, renders the claims nondischargeable.

Debtors urge the court to employ the interpretation of section 507(a)(7)(A)(iii) espoused in *Doss v. United States (In re Doss)*, 42 B.R. 749 (Bankr.E.D.Ark.1984). In *Doss*, the debtor-taxpayer filed *untimely* returns more than two years before the petition in bankruptcy. The taxes were not all assessed prior to the taxpayer's petition in bankruptcy and the three-year statute of limitation under 26 U.S.C. 6501 had not yet run. *Id.* at 751. The court interpreted section 507(a)(6)(A)(iii) [now section 507(a)(7)(A)(iii)] and held that the first clause ("other than a tax of a kind specified in Section 523(a)(1)(B) or Section 523(a)(1)(C) of this title") is related to and modified by the subsequent clauses ("not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case") and that subdivision (iii) is an exclusion to subdivisions (i) and (ii). *Id.* at 754. Accordingly, the court held that the taxes for the years in question were not entitled to priority and thus were dischargeable because the taxes fell within one of the exclusions in subdivision (iii). *Id.* at 754. In other words,

> [T]he *Doss* court held that Section 507(a)(6)(A) contained its own exclusions; namely taxes of a kind specified in Section 523(a)(1)(B), and that merely because a tax was still 'assessable' as of the date of the filing of the Title 11 petition did not mean that a tax excluded from the nondischargeability provision of Section 523(a)(1)(B)(ii) was, nonetheless, nondischargeable under Section 507(a)(6)(A)(iii).

*Longley v. United States (In re Longley)*, 66 B.R. 237, 241 (Bankr.N.D. Ohio 1986);

*see also In re Treister*, 52 B.R. 735, 738 n. 6 (Bankr.S.D.N.Y.1985).

The better interpretation of section 507(a)(7)(A)(iii) is that sections 523(a)(1)(B) and 523(a)(1)(C) are exceptions to subdivision (iii) only. If the exceptions do not apply and the tax is still assessable, the tax would be entitled to priority under section 507(a)(7)(A)(iii). *Cooper v. IRS (In re Cooper)*, 48 B.R. 420, 421 n. 2 (Bankr.C.D.Ill. 1985); *Edwards v. IRS (In re Edwards)*, 74 B.R. 661, 664–65 (Bankr.N.D. Ohio 1987); *Longley*, 66 B.R. at 241–42; *see also Treister*, 52 B.R. at 738; *Massoni v. District Director of IRS*, 20 B.R. 416, 419 (Bankr.D.Kan.1982). Further, if a tax met one of the exceptions, it would be nondischargeable but it would not be entitled to priority under section 507(a)(6). *Cooper*, 48 B.R. at 421 n. 2. "The two categories of tax claims, nondischargeable priority claims and nondischargeable claims, are not mutually exclusive." *Edwards*, 74 B.R. at 663–64.

This interpretation is consistent with legislative intent.

> The House version of section 523(a)(1) would have excepted from discharge taxes reported on a fraudulent return or willfully evaded by the debtor, or which were due less than *one year* before the petition was filed, but were not reported. H.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977). The Senate version would have excepted from discharge taxes arising from late returns filed less than *three* years before the petition was filed. S.Rep. No. 989, 95th Cong., 2d Sess. 78 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Apparently, what emerged was a compromise of two years. *See* 11 U.S.C. section 523(a)(1)(B)(iii).

*Id.* at 664–65 (emphasis in original).

> The bankruptcy policy for this treatment is that it is *not fair to penalize private creditors of the debtor by paying out of the "pot" of assets in the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kinds of taxes. Therefore, these taxes have no*

*priority in payment from the estate but would survive as continuing debts after the case.*

Committee on Finance, S.Rep. No. 1106, 95th Cong., 2d Sess. 22 (1978) (*cited in Edwards,* 74 B.R. at 665 (emphasis added therein)).

From this passage it becomes clear that the legislative intent is to treat tax claims arising from late-filed or fraudulent returns as nondischargeable, but general unsecured claims, and to treat tax claims arising from current returns, or recently assessed or assessable tax returns, as nondischargeable, but unsecured claims with priority treatment. In balancing the interests of the general creditors, the debtor and the tax collector, the treatment of tax claims was designed to give "governmental units a priority claim on assets of the debtor's estate for certain taxes which have not grown so 'stale' as to constitute an unjustifiable burden on general unsecured creditors (who may have extended new credit to the debtor since the tax liability arose)."

*Edwards,* 74 B.R. at 665 (*quoting* Committee on Finance, S.Rep. No. 1106, 95th Cong. 2d Sess. 22 (1978) at 5).

Clearly, Debtors' taxes do not meet the exceptions within section 507(a)(7)(A)(iii). Therefore, if the taxes are still assessable, they are non-dischargeable.

Debtors argue that 1981[4] taxes are no longer assessable because the statute of limitations under 26 U.S.C. section 6501(a) has run and no valid extension of that limitation was made. IRS counters that valid Special Consents [IRS Forms 872–A] were executed by Debtors or by a representative on their behalf and, therefore, the taxes were still assessable at the time Debtors filed for bankruptcy.

The general three-year statute of limitation under 26 U.S.C. section 6501(a) may be extended by written consent of the IRS and the taxpayer. 26 U.S.C. section 6501(c)(4). The tax may then be assessed at any time

prior to the expiration of the extension agreed upon. *Id.* IRS furnishes Form 872–A, "Special Consent to Extend the Time to Assess Tax." Upon valid execution, a Special Consent provides that taxes due

may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872–T to the taxpayer(s); or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited.

IRS Form 872–A (Rev. September 1980). However, there are instructions on the back of the form. One provides:

If you are an attorney or agent of the taxpayer(s), you may sign this consent provided the action is *specifically* authorized by a power of attorney. If the power of attorney was not previously filed, please include it with this form.

*Id.* (emphasis added).

IRS Form 2848, "Power of Attorney and Declaration of Representative," provides for the appointment of a representative by a taxpayer and the attorney-in-fact to:

... represent the taxpayer(s) before any office of [IRS] for tax matters ... [specified by type, federal tax form number, and year(s) or period(s) in the appropriate form boxes]. The attorney(s)-in-fact (or either of them) are authorized, subject to revocation, to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above specified tax matters (excluding the power to receive refund checks, and the power to sign the return (see regulations section 1.6012–1(a)(5), Returns made by agents), unless

---

**4.** Debtors concede that they personally executed a valid Special Consent to Extend the Time to Assess Tax (Form 872–A) for tax year 1982 and

that the taxes for the 1982 tax year are assessable. Plaintiffs' [Debtors'] Trial Brief, p. 28 (filed November 2, 1987).

specifically granted below). [A space for specifically granting generally excluded powers is thereafter provided.]

IRS Form 2848 (Rev. October 1983).

On September 18, 1984, Debtors executed two Forms 2848 and designated Berge as their representative for individual taxes, federal tax form number 1040, for years 1975, 1976, 1977, 1978, 1979, 1980, 1981, 1982 and 1983. Both were filed with IRS on September 24, 1984. On January 8, 1985, Berge executed a Special Consent for income taxes for tax year 1981 on Debtors' behalf. They now argue that Berge was not authorized to execute the Special Consent. IRS urges the Court to find the Special Consent for the 1981 tax was valid pursuant to a Treasury regulation[5] which states that a power of attorney executed via an IRS Form 2848 is sufficient to authorize an agent to execute a consent to extend the statutory period for assessment of a tax.

■ If a taxpayer pleads the statute of limitations as a bar to the assessment of the taxes, he must make a prima facie case by proving the filing date of the return; this burden can be met by putting the return into evidence. *Robinson v. Commissioner*, 57 T.C. 735 (1972) (cited in *Lef-*

*ebrve v. Commissioner*, T.C. Memo 1984–202 [para. 84,202 P–H Memo T.C.]). The IRS must then go forward with countervailing proof that for some reason the period has not expired. *Id.* This burden can be met by introducing into evidence a consent, valid on its face, that extends the period for assessment. *Concrete Engineering Co. v. Commissioner*, 19 BTA 212 (1930), *aff'd.* 58 F.2d 566 (8th Cir.1932) (cited in *Lefebrve v. Commissioner*, T.C. Memo 1984–202 [para. 84,202 P–H Memo T.C.]). If the taxpayer then asserts the consent was ineffective, then the taxpayer must prove the invalidity of the consent. *Crown Willamette Paper Co. v. McLaughlin*, 81 F.2d 365 (9th Cir.1936), and *Concrete Engineering*, 19 BTA at 221 (cited in *Lefebrve v. Commissioner*, T.C. Memo 1984–202 [para. 84,202 P–H Memo T.C.]).

■ It is not disputed that returns for all tax years in question were timely filed. IRS has gone forward with proof of an extension of the applicable assessment period by introducing a Special Consent for tax year 1981 which is valid on its face. Consequently, Debtors had to prove the consent was invalid. This they failed to do.[6]

The Court finds no evidence which would support a conclusion that Debtors limited

---

**5.** The regulation provides:

(c) *Requirement of a power of attorney or a tax information authorization* —(1) *Requirement of power of attorney.* Except as otherwise provided in subparagraphs (3)(iii), (4), and (5) of this paragraph, a power of attorney in proper form, or a copy thereof (for rules relating to copies, see paragraph (e) of section 601.504), executed by the taxpayer, will be required in a matter by the Revenue Service when the taxpayer's representative desires to perform one or more of the following acts on behalf of the taxpayer.

. . . .

(iii) Execution of a consent to extend the statutory period for assessment or collection of a tax.

. . . .

Form 2848 or a general power of attorney given to a representative by a taxpayer, granting to the representative power to perform any and all acts that the taxpayer can perform, will meet the requirements for a power of attorney with respect to the acts specified in subdivisions (ii), (iii), and (iv) of this paragraph (c)(1).

. . . .

If the taxpayer wishes to exclude granting authority to perform any specific acts (including acts for which a power of attorney is required by this paragraph (c)), language excluding such acts should be inserted in the power of attorney.

26 CFR section 601.502(c) (in pertinent part). Since the decision herein is not premised on the application of this regulation, the Court does not decide here whether this regulation has the effect of law, *see Petroleum Heat and Power Co. v. United States*, 405 F.2d 1300, 1302–03, 186 Ct.Cl. 486 (1969), or whether it is merely a procedural rule which governs the internal affairs of the IRS. *See Einhorn v. DeWitt*, 618 F.2d 347, 350 (5th Cir.1980). *See also* 5 U.S.C. section 301; 26 U.S.C. section 7805.

**6.** Debtors concede the circumstances here do not warrant a finding that Berge was under duress when he executed the Special Consent or that the consent was obtained by deception. Plaintiffs' [Debtors'] Trial Brief, p. 43 (filed November 2, 1987). Therefore, the Court finds Debtors' argument that IRS should be estopped from assessing or collecting the disputed taxes because of improper conduct or material misrepresentations need not be considered further.

their power of attorney so as to preclude Berge from executing an extension of the assessment period. Debtors were not required by IRS to use the standard IRS form to designate Berge as their representative. *See* 26 CFR section 601.504. Moreover, a formal written designation of an attorney-in-fact is presumed to accurately state the principal's intent. *Abodeely v. Cavras,* 221 N.W.2d 494, 501 (Iowa 1974). Further, Debtors' declaration of Berge as their representative authorized Berge "to perform any and all acts that the principal(s) can perform with respect to the above-specified tax matters (excluding the power to receive refund checks, and the power to sign the return ...)."

■ Admittedly, the language in the instructions on the Special Consent form indicates that a specific power needs to be granted to an agent prior to the agent's execution of the Special Consent. However, that language cannot reasonably be held to somehow retroactively limit Berge's power-of-attorney.

■ Finally, there is no evidence that Debtors revoked Berge's power-of-attorney prior to Berge's execution of the 1981 Special Consent. Mere silence or a refusal to sign the forms mailed by Berge or Hoard are insufficient. *See* 26 CFR section 601.505(c)(2).

■ Having concluded that valid Special Consents for tax years 1981 and 1982 were executed, a determination of whether the taxes for those years are assessable is readily made. Each Special Consent was executed by or on behalf of Debtors within three years of filing of the return for that tax year. Each Special Consent was executed prior to Debtors' petition in bankruptcy. Each Special Consent extended the allowed period for assessment for that tax year until

> on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872–T to the taxpayer(s); or (c) the Inter-

nal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited.

There has been no evidence of any mailing or receipt by IRS of a Form 872–T. Moreover, a Notice of Deficiency was not mailed by the IRS until December 19, 1986, several months after Debtors' petition in bankruptcy. Clearly then, the tax claims of IRS were (subject to Debtors' remaining argument) assessable after "the commencement of the case," 11 U.S.C. section 507(a)(7)(A)(iii), and, therefore, were nondischargeable. 11 U.S.C. section 523(a)(1)(A).

■ Debtors' final contention is that the Special Consents extended the applicable period of assessment for tax years 1981 and 1982 only. They argue that any audit adjustments from certain carrybacks from 1981 for tax years 1975, 1976, 1978 or 1979 are now barred from assessment under the applicable statute of limitation.

There are specific statutes of limitation for carrybacks of net operating loss, capital loss, or certain credit.

> Net operating loss or capital loss carrybacks.—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(3), *such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed.*

26 U.S.C. section 6501(h) (emphasis added).

> Certain credit carrybacks.—
>
> (1) In general.—In the case of a deficiency attributable to the application to the taxpayer of a credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(3)), *such deficiency may be assessed at any time before the expira-*

*tion of the period within which a deficiency for the taxable year of the unused credit which results in such carryback may be assessed, or with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.*

(2) Credit carryback defined.—For purposes of this subsection, the term "credit carryback" has the meaning given such term by section 6511(d)(4)(C).

26 U.S.C. section 6501(j)(1) & (2) (emphasis added).

These provisions are quite unambiguous. Since the expiration for assessment for 1981 and 1982 had not expired prior to the commencement of the case, the Court holds that any deficiency attributable to a carryback described above in section 6501(j) or (h) was assessable "at the commencement of the case", 11 U.S.C. section 507(a)(7)(A)(iii), and, therefore, is nondischargeable. *See First Chicago Corp. v. Commissioner,* 742 F.2d 1102 (7th Cir. 1984). The Court does not herein decide whether deficiencies asserted for 1975, 1976, 1978 and 1979 are assessable; it holds only that if the deficiencies claimed for these years are in fact attributable to carrybacks from either 1981 or 1982, they are assessable and, therefore, are non-dischargeable under section 507(a)(7)(A)(iii).

■ Finally, the Court herein makes no determination of the actual amount of taxes that are non-dischargeable. IRS has urged the Court to accept the amounts stated in the Notice of Deficiencies, *see* Trial Brief of the United States page 6, as well as the amounts stated in its claim. *See* Post Trial Brief of the United States, at p. 6. Any presumption that the amounts in the Notices of Deficiency are correct, following *Banks v. Commissioner,* 322 F.2d 530 (8th Cir.1963), or any presumption arising under Bankr.R. 3001(f), are, therefore, more appropriately recognized by the Court in a subsequent adversary proceeding, if necessary, in which the validity of IRS's claim is adjudicated.

ORDER

IT IS THEREFORE ORDERED that the debts of Robert L. Crist and Linda S. Crist for federal personal income tax deficiencies for tax years 1981 and 1982 are nondischargeable;

IT IS FURTHER ORDERED that the debts of Robert L. Crist and Linda S. Crist for federal personal income tax deficiencies for tax years 1975, 1976, 1978 and 1979 are nondischargeable to the extent that any deficiencies for those years relate to assessable carrybacks from tax years 1981 or 1982 of net operating loss, capital loss, or certain credit as governed by 26 U.S.C. section 6501(h) or 26 U.S.C. section 6501(j);

IT IS FURTHER ORDERED that that portion of Plaintiffs Robert L. Crist and Linda S. Crist's Complaint which seeks an Order to Defendant IRS and its agents to cease any action to collect any taxes, interest and penalties is denied;

IT IS FURTHER ORDERED that that portion of Plaintiffs Robert L. Crist and Linda S. Crist's Complaint which seeks a determination of the amount of their non-dischargeable federal income tax liabilities is hereby dismissed without prejudice.