In re Anthony Stanley **VITALIANO,** Debtor.

Anthony Stanley **VITALIANO, Appellant,**

v.

**STATE OF CALIFORNIA, FRANCHISE TAX BOARD, Appellee.**

BAP No. EC–94–1543–JRC.
Bankruptcy No. 91–22404–B–7.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 16, 1994.

Decided Jan. 9, 1995.

Pamela C. Jackson, Vacaville, CA, for appellant.

Robert D. Milam, Sacramento, CA, for appellee.

Before: JONES, RUSSELL, and CARLSON,[1] Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

The debtor appeals an order finding a tax debt to be nondischargeable pursuant to § 11 U.S.C. 523(a)(1)(A).

## I. FACTS

In December, 1989, the Internal Revenue Service (IRS) audited Appellant Anthony Vitaliano's tax returns for the years 1983 through 1987, assessing a deficiency for each year. Rather than suffer the expense of fighting the IRS, Vitaliano agreed to sign a Notice of Deficiency Waiver and pay the additional taxes. He signed the waiver on June 12, 1990.

Under California law, a taxpayer·must notify the California Franchise Tax Board ("Board") of any corrections made by the IRS within 90 days after the IRS' determination becomes final.[2] Cal.Rev. & Tax.Code § 18451 (West 1994). If the Board receives notice from the taxpayer within 90 days, it only has 6 months in which to assess a state tax deficiency based upon those changes. *Id.* § 18586. If the Board does not receive notice from the taxpayer within the 90 days, it has 4 years in which to assess a deficiency. *Id.* § 18586.2.

In the June 12, 1990 letter to the IRS in which Vitaliano returned the waiver forms, Vitaliano asked the IRS to notify the Board of the changes. On September 4, 1990, within the 90–day period, the Board received a Revenue Agent's Report (RAR) from the IRS, stating that it had made changes in Appellant's tax returns and had assessed deficiencies. This report was arguably the result of Vitaliano's request, because the IRS had already sent an RAR to the Board on April 12, 1990.

---

1. Hon. Thomas E. Carlson, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Although the parties disagree on what date this assessment became "final" for purposes of beginning the 90–day California notice period, the earliest date was June 14, 1990, and the latest date was July 30, 1990. Since the IRS' notification of the tax deficiency was received within 90 days of June 14, and Appellant's own notice was mailed more than 90 days after July 30, the actual date of finality is not at issue.

Because Vitaliano did not hear from the Board, Vitaliano's attorney sent it a letter on November 5, 1990, after the 90–day period had expired, advising them of the changes. Vitaliano filed a Chapter 7 bankruptcy petition on April 1, 1991. On May 27, 1992, the Board sent Vitaliano proposed deficiency assessments for each of the tax years 1983 through 1987.

The bankruptcy court held that the September 4, 1990, submission of the RAR by the IRS did not comply with the notice requirements of California Revenue and Taxation Code ("California Tax Code") § 18451. The court based its ruling on the fact that an RAR does not purport to be a final disposition of a tax deficiency notice—it merely states that the IRS is taking the position that the taxpayer's return is incorrect. Since Vitaliano's own letter was mailed after the 90–day notice period had expired, the Board had four years to assess the deficiencies. Therefore the May 27, 1992 assessments were valid as 11 U.S.C. § 507(a)(7)(A)(iii) priority claims and nondischargeable under 11 U.S.C. § 523(a)(1)(A).

## II. ISSUES

1. Did the lower court err in holding that the RAR received by the Board from the IRS on September 4, 1990 was not notice from the taxpayer as required by California Tax Code § 18451?

2. Did the bankruptcy court err in according the tax deficiency priority status under 11 U.S.C. § 507(a)(7)(A)(iii) and therefore holding it nondischargeable under 11 U.S.C. § 523(a)(1)(A)?

## III. STANDARD OF REVIEW

The facts in this case are not in dispute. What is in dispute is the bankruptcy court's interpretation of the California Tax Code and its application of two provisions of the Bankruptcy Code. We review issues of law *de novo. In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1333 (9th Cir.1985).

## IV. DISCUSSION

A. *Reporting Requirements of California Tax Code § 18451*

▆ Section 18451 of the California Tax Code requires a taxpayer to report changes or corrections in his federal tax return to the Board. The report must be sent by "the taxpayer" and must either concede the accuracy of the IRS changes, or state how the IRS changes are erroneous. Cal.Rev. & Tax. Code § 18451 (West 1994). In addition, any report filed under § 18451 must meet the reporting requirements of California Code of Regulations § 18586, which requires the debtor to mail the original or a copy of "the final determination" of the IRS assessment to the Board. Cal.Code Regs. tit. 18, § 18586 (1994).

The debtor argued that the RAR sent by the IRS satisfied the reporting requirements of the statute. After an initial hearing and supplemental briefing, the court ruled that:

> "At first blush, it might not appear to be important as to whom notifies the [Board] of the changes in taxpayers' federal income taxes, so the debtor's argument ... seems plausible. Upon careful review ... this argument collapses. As shown by the testimony of Jeanne Houston, the [Board] receives the RARs in large batches, with no attempt to distinguish any particular RAR.... [T]here was no evidence whatsoever that the September 4 mailing was an IRS response to the letter of June 12. Even if this court could accept the proposition that the receipt by the [Board] on September 4, 1990 of another copy of the RAR it had previously received on April 12 of that year somehow constituted notice of the IRS' 'final determination,' it was not a report from the debtor and it most assuredly did not constitute a concession by the debtor of 'the accuracy of such determination' by the IRS. Applying the 'plain meaning' statutory interpretation doctrine to the facts of this case can only lead to the conclusion that the debtor simply failed to comply with the notice requirements of R & TC § 18451."

*Appellant's Excerpts of Record on Appeal* at 130–31.

The debtor argues that receipt of an RAR should be sufficient to comply with the notice requirement of § 18451 because the Board's

own policy requires RARs to be processed within 24 days. However, as indicated above, the IRS sends the RARs to the Board pursuant to an agreement—not as fulfillment of § 18451. In addition, the plain language of § 18451 and Regulation 18586 clearly indicate that receipt of the RARs is not the notice to which the Board is entitled.

It seems clear that the mere receipt of an RAR, even at the debtor's request, does not satisfy the reporting requirements of § 18451, since it is not notice of the "final determination" of the tax deficiency.

## B. *Priority Status and Nondischargeability of the Tax Deficiency*

11 U.S.C. § 507(a)(7)(A)(iii) provides:

(a) The following expenses have priority in the following order:

     \*     \*     \*     \*     \*     \*

  (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

    (A) a tax on or measured by income or gross receipts—

       \*     \*     \*     \*     \*     \*

    (iii) other than a tax specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of this case . . .

■ The trial court ruled that since the taxes were properly assessable (and did not come within the definition of 11 U.S.C. § 523(a)(1)(B) or (C)), they were allowed priority claims under 11 U.S.C. § 507(a)(7)(A), and were therefore nondischargeable under 11 U.S.C. § 523(a)(1)(A).[3] This ruling is a correct reading of the plain language of the applicable bankruptcy provisions.

The debtor argues that even if the taxes were properly assessed, they are nonetheless dischargeable. The debtor apparently misreads the Bankruptcy Code, arguing that in order for a tax debt to qualify as a priority

claim pursuant to 11 U.S.C. § 507(a)(7), it must satisfy 11 U.S.C. § 507(a)(7)(A)(i), (ii), *and* (iii). However, the bankruptcy code clearly contemplates that a tax debt must fit into only one of those three subsections in order to obtain priority status. *See Matter of Longley*, 66 B.R. 237, 241 (Bankr.N.D.Ohio 1986) (agreeing with cases that hold that "the failure of a tax to fit within Section 507(a)(7)(A)(i) does not render Section 507(a)(7)(A)(ii) and (iii) inapplicable.").

The debtor also cites *In re Doss*, 42 B.R. 749 (Bankr.E.D.Ark.1984). In *Doss*, the debtor had filed late returns for several tax years, then filed bankruptcy more than two years after having filed these late returns. The court held that because the returns were not excepted from discharge under 11 U.S.C. § 523(a)(1)(B)(ii) (because they were filed late and filed more than 2 years prior to bankruptcy), they were dischargeable, notwithstanding the application of 11 U.S.C. § 507(a)(7)(A)(iii).

There are two problems with applying *Doss* to the instant appeal. First, the case involves a very dubious reading of the Bankruptcy Code. Although *Doss* has been widely cited by debtors seeking discharge of tax debts, every court which has considered it has either distinguished it or criticized it. *See In re Crist*, 85 B.R. 807, 812 (Bankr. N.D.Iowa 1988); *In re Torrente*, 75 B.R. 193, 195 (Bankr.S.D.Fla.1987); *see also In re Etheridge*, 91 B.R. 842 (Bankr.C.D.Ill.1988) (declining to discuss the propriety of *Doss* since it was distinguishable).

Second, even if we thought the *Doss* court's interpretation had merit, *Doss* involved late-filed returns, a factually different situation from the instant appeal. Here, the returns were filed on time, do not come within 11 U.S.C. § 523(a)(1)(B) or (C), and thus properly come within 11 U.S.C. § 507(a)(7)(A)(iii). *See, e.g., Longley*, 66 B.R. at 241; *In re Treister*, 52 B.R. 735, 738 n. 6 (Bankr.S.D.N.Y.1985) (cases which both distinguish *Doss* in a factual situation similar to the instant appeal).

---

**3.** 11 U.S.C. § 523(a)(1)(A) states that a discharge under Chapter 7 does not discharge tax debts "of the kind ... specified in section ... 507(a)(7)."

The majority interpretation of the interaction between these two provisions is consistent with the policy behind the tax priority and nondischargeability provisions.

> [I]t becomes clear that the legislative intent is to treat tax claims arising from late-filed or fraudulent returns as nondischargeable, but general unsecured claims, and to treat tax claims arising from current returns, or recently assessed or assessable tax returns, as nondischargeable, but unsecured claims with priority treatment. In balancing the interests of the general creditors, the debtor and the tax collector, the treatment of tax claims was designed to give "governmental units a priority claim on assets of the debtor's estate for certain taxes which have not grown so 'stale' as to constitute an unjustifiable burden on general unsecured creditors (who may have extended new credit to the debtor since the tax liability arose)."

*In re Edwards,* 74 B.R. 661, 665 (Bankr. N.D.Ohio 1987) (*quoting* Committee on Finance, S.Rep. No. 1106, 95th Cong., 2d Sess. 5 (1978)).

## V. CONCLUSION

The court correctly held that the information supplied by the IRS was inadequate to satisfy California Tax Code § 18451. Therefore, the California Franchise Tax Board had 4 years in which to assess any deficiencies against the debtor. Since the tax deficiencies were assessed after the bankruptcy petition was filed, but before the end of the 4-year assessment period, the tax claims were priority claims under 11 U.S.C. § 507(a)(7)(A)(iii) and are therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A). The decision of the bankruptcy court is AFFIRMED.