In re David Edward DANIEL, Jr., Debtor.

David Edward DANIEL, Jr., Movant,

v.

UNITED STATES of America acting By and Through the INTERNAL REVENUE SERVICE, Respondent.

Bankruptcy No. 93–10665.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 30, 1994.

Order on Reconsideration
May 26, 1994.

▪

Lee Ringler, Augusta, GA, for debtor/movant.

Edmund A. Booth, Jr., First Asst. U.S. Atty., Augusta, GA, for respondent.

### *ORDER*

JOHN S. DALIS, Bankruptcy Judge.

Debtor filed the above referenced chapter 13 case on May 3, 1993. The United States of America acting by and through the Internal Revenue Service ("IRS") filed an unsecured priority claim for $31,425.85 and a general unsecured claim for $3,170.41. A portion of the unsecured priority claim, the sum of $20,148.00, represented estimated liability in the amount of $5,037.00 for each tax year 1989 through 1992 in which income tax returns were not filed. The matter before me is debtor's objection to the IRS claim for priority treatment of this estimated tax liability. Having heard and considered the evidence presented and briefs of counsel, I enter the following order.

Debtor contends that under Bankruptcy Code § 507(a)(7)(A)(iii),[1] income tax

---

1. 11 U.S.C. § 507(a)(7) provides:

(a) The following expenses and claims have priority in the following order:

liabilities for unfiled returns made nondischargeable under § 523(a)(1)(B)[2] are not entitled to priority treatment in his chapter 13 plan. The IRS contends that § 507(a)(7)(A)(i)–(iii) establishes three alternative grounds for establishing priority classification of unsecured tax claims and if any one of the three part requirements are met then the claim must be accorded priority. In this case, the IRS contends that debtor's income tax liability for the years at issue is entitled to priority treatment under part (i) of § 507(a)(7)(A) as liability for taxes for which a return is due within three years of the bankruptcy filing.[3]

Although no reported decisions have addressed the precise factual situation present in this case, cases considering the interplay of the three parts of § 507(a)(7)(A) have consistently upheld the IRS position that "§ 507(a)(7)[ (A) ] is disjunctive [and] ... classifies an unsecured claim for an unpaid income tax as a seventh priority claim on three alternative grounds." *In re Wines*, 122 B.R. 804, 806–07 (Bankr.S.D.Fla.1991) *aff'd in pertinent part*, 1992 WL 200602, Bankr. L.Rep. 74,674 (S.D.Fla.1992). *See also, In re Easton*, 59 B.R. 714, 716–17 (Bankr.C.D.Ill. 1986); *In re Carter*, 74 B.R. 613, 616 (Bankr. E.D.Pa.1987); *In re Wood*, 78 B.R. 316, 319 (Bankr.M.D.Fla.1987); *In re Etheridge*, 91 B.R. 842, 844–45 (Bankr.C.D.Ill.1988) *aff'd sub nom., Etheridge v. State of Illinois*, 127 B.R. 421 (C.D.Ill.1989). These cases follow the line of reasoning initially set forth in *Easton, supra*, and rely on the statutory rule of construction found in 11 U.S.C. § 102(5) that the word "or", which is used in § 507(a)(7)(A) between parts (ii) and (iii), is not exclusive and therefore, merely because a tax liability does not fall within one of the three parts of § 507(a)(7)(A) does not provide it a safe harbor from another part which squarely applies. *Easton, supra* at 715–17.

In *Easton* the court held that a debtor's taxes which were due more than three years prior to the debtor's chapter 7 filing and which would not have been excepted from

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts—
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

2. The debtor is wrong in his contention that income tax liabilities for unfiled returns are nondischargeable under § 523(a)(1)(B). Section 523(a)(1) provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title [11] does not discharge an individual debtor from any debt—
(1) for a tax or a customs duty—
(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed:

(B) with respect to which a return, if required—
(i) was not filed; or
(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or;
(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

In this case the debtor is pursuing a discharge under 11 U.S.C. § 1328(a) which provides in pertinent part:

As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under § 502 of this title, except any debt— ... (2) of the kind specified in paragraph (5), (8) or (9) of section 523(a) of this title [11]; ....

Section 523(a)(1) exception to discharge does not apply to a § 1328(a) discharge.

3. The IRS appears incorrect in its contention as to debtor's tax liability for the year 1989. Assuming that debtor is a calendar year taxpayer and that no filing extensions were granted, debtor's return for the 1989 tax year would have been last due on April 15, 1990. That date is not within three years of debtor's bankruptcy filing on May 3, 1993.

discharge under § 523(a)(1)(A) and § 507(a)(7)(A)(i) were nonetheless, entitled to priority and were nondischargeable pursuant to § 507(a)(7)(A)(ii) as they had been assessed by the IRS within 240 days prior to the debtor's bankruptcy filing. *Id.* Besides relying on the rules of construction found in the Bankruptcy Code, the *Easton* court noted that the legislative history to § 507 addressed this situation.

> Priority is given to income taxes and other taxes of a kind described in section 507(a)(6)(A)(i) and (ii) which the Federal, State or local tax authority had assessed within three years after the last due date of the return, that is including any extension of time to file the return, if the debtor filed in title 11 within 240 days after the assessment was made (§ 507(a)(6)(B)(i)). *This rule may bring into the sixth priority the debtor's tax liability for some taxable years which would not qualify for priority under the general three year rule of section 507(a)(6)(A).* S.Rep. No. 95–989, 95th Cong., 2d Sess. 70 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5856.

*Id.* at 717 (emphasis added).[4] Although not noted by the court in *Easton,* the following legislative history of § 507 also supports interpreting § 507(a)(7)(A) as containing alternative grounds for granting priority to income tax claims.

> The House Amendment [representing a compromise between similar provisions contained in HR 8200 as passed by the House and the Senate amendment] deletes the express provision of the Senate amendment that a tax liability is to receive sixth priority if it satisfies any of the subparagraphs of section 507(a)(6) even if the liability fails to satisfy the terms of one or more other subparagraphs. No change of substance is intended by the deletion, however, in light of section 102(5) of the House amendment, providing a rule of construction that the word "or" is not intended to be exclusive.

124 Cong.Rec. H32383 (Sept. 28, 1978) (remarks of Rep. Edwards). This legislative history notes that the subparagraphs (A)–(G) of § 507(a)(6) [now (7)] are alternative grounds for governmental claims receiving sixth [now seventh] priority status. Section 507(a)(7) separates its subparagraphs by semicolons with the word "or" placed between the last subparagraphs (F) and (G). Section 507(a)(7)(A) is configured in that same structure. Therefore, parts (i)-(iii) of § 507(a)(7)(A) are alternative grounds for priority treatment of claims falling within subparagraph (A) of § 507(a)(7).

■ Debtor contends, however, that the cases of *In re Doss,* 42 B.R. 749 (Bankr. E.D.Ark.1984) and *In re Edwards,* 74 B.R. 661 (Bankr.N.D.Ohio 1987) mandate a different result.

In *Doss,* at issue was the dischargeability and priority of unassessed tax liabilities for which debtor had made an untimely filing [after the date on which the return was last due] more than two years prior to debtor's bankruptcy filing. Under § 523(a)(1)(B)(ii), this tax liability would be dischargeable. Nevertheless, the IRS argued that because the taxes were still assessable, due to extensions having been filed for those taxes, under § 507(a)(7)(A)(iii) the tax liabilities should qualify for priority status. *Doss, supra* at 753–54. The *Doss* court rejected this argument and noted that the provisions of § 507(a)(7)(A)(iii) specifically gives priority to taxes "other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C), not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case" and that the phrases following the initial clause, must be interpreted to modify that clause. Accordingly, it determined that § 523(a)(1)(B) taxes could not be given priority status under § 507(a)(7)(A)(iii) even though they remained assessable post-petition. *Id.* at 754. This analysis, however, provides no authority for debtor's implicit contention that no § 523(a)(1)(B) tax liabilities can be accorded priority status. The *Doss* rationale serves

---

4. Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, a new priority for claims of grain producers and United State fishermen was created. At that time, the sixth priority treatment given to income and gross receipt taxes was redesignated as the seventh priority.

only to deny priority status to § 523(a)(1)(B) liabilities when the ground for priority is part (iii) of § 507(a)(7)(A). It does not specifically address whether priority status can be given to such liabilities when the ground for priority is either part (i) or (ii) of § 507(a)(7)(A).

In *Edwards*, the court held that a tax liability for a *timely* filed return which was filed more than two years prior to debtor's chapter 7 bankruptcy was entitled to priority treatment under § 507(a)(7)(A)(iii) as it remained assessable post-petition due to a written extension to the three year statute of limitations for assessment given the IRS by the debtors. 74 B.R. at 662–666. The court distinguished this situation from *Doss*, as in its case, the return had been timely filed and therefore, the tax liability did not fall within the parameter of § 523(a)(1)(B)(ii). *Id.* at 664. Nevertheless, the court went on to discuss legislative history concerning § 507(a)(7) and § 523(a)(1) concluding that § 523(a)(1)(B) and (C) tax claims resulting from unfiled, late filed, and fraudulent returns were to be treated as nondischargeable, but general unsecured claims, and that tax claims arising from current returns and recently assessed or assessable returns were to be treated, as nondischargeable, but unsecured priority claims.

Taxes that are excepted from discharge under S. 2266 (as well as under present law) include claims against the debtor which receive priority in distribution of property of the estate.

Certain prepetition tax liabilities are not given priority in distribution from property of the estate, but under S.2266 would survive as liabilities of the debtor after the case. This category includes (1) taxes for which the debtor had not filed a return as of the bankruptcy petition, or for which a return had been filed beyond its due date but within three years before the petition, and (2) taxes with respect to which the debtor filed a fraudulent return, or as to which he fraudulently attempted to evade or defeat any tax.[5]

The bankruptcy policy for this treatment is that it is *not fair to penalize private creditors of the debtor by paying out of the "pot" of assets in the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kind of taxes. Therefore, these taxes have no priority in payment from the estate but would survive as continuing debts after the case.* (Not giving priority to a debt means that the creditor can still collect part or all of the debt from the estate, but the creditor must do so as a general creditor, sharing pro rata with other general creditors).

*Id.* at 665 (quoting Committee on Finance, S.Rep. No. 1106, 95th Cong., 2d Sess. 22 (1978) (emphasis supplied in *Edwards*)).

In categorically denying any § 523(a)(1)(B) or (C) tax liabilities a priority status, the legislative history cited by *Edwards* implicitly construes § 507(a)(7)(A)(iii) as creating an exception for those liabilities, not only from part (iii), but also from parts (i) and (ii). This interpretation ignores the use of the word "or" in § 507(a)(7)(A) to contravene consistent interpretations of statutory structures such as found in § 507(a)(7)(A) as providing alternative grounds for priority status. *See supra* cases interpreting § 507(a)(7)(A)(i)–(iii); legislative history interpreting § 507(a)(7)(A)–(G). *See also, Etheridge v. State of Illinois*, 127 B.R. 421 (C.D.Ill.1989) (interpreting § 523(a)(1)–(9) and § 523(a)(1)(A)–(C) as alternative, independent subsections and subdivisions). The issue before me is whether § 507(a)(7)(A)(iii) legitimately can be interpreted to provide for an absolute exclusion from priority status § 523(a)(1)(B) and (C) tax liabilities, despite the statute's apparent grant of alternative grounds for priority status under § 507(a)(7)(A).

While various interpretations of § 507(a)(7)(A)(iii) have been put forth, as with *Edwards*, none were advanced in a situation where the asserted ground for priority

---

**5.** This paragraph refers to the provisions of § 523(a)(1)(B)(i), (ii) and (C) as they existed in the Senate Bill prior to the final House amendment which altered the time frame for late filed

returns, noted in (1) as three years, to two years. The final sentence of this paragraph in the Senate Report contained a footnote 19, which is noted in this text as the paragraph following.

status of a claimed § 523(a)(1)(B) liability was either part (i) or (ii) of § 507(a)(7)(A) and accordingly, such interpretations do not provide any authoritative guidance in this instance. *See, e.g., Doss supra; In re Crist,* 85 B.R. 807, 812 (Bankr.N.D.Iowa 1988); *In re Wines,* 1992 WL 200602, Bankr.L.Rep. 74,674 (S.D.Fla.1992).

In deciding this issue, I find conclusive the rule of construction noted by the United States Supreme Court that

> [t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'

*U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In this case, a literal reading of § 507(a)(7)(A) and its use of the word "or" establishes that a § 523(a)(1)(B) or (C) liability may be given priority status if it falls within § 507(a)(7)(A)(i) or (ii). This literal application of the statute does not produce a result demonstrably at odds with the intentions of the drafters. In *Edwards* the report of the Committee on Finance set forth the policy consideration in not granting priority treatment for § 523(a)(1)(B) or (C) tax liabilities. To permit priority treatment would allow the tax liability to be paid from the assets of the bankruptcy estate ahead of general unsecured creditors which has the effect of penalizing the general unsecured creditors for the misconduct of the debtor. Disallowing priority treatment for this type of tax liability would not harm the government's position in that the liability is not discharged which allows continued collection efforts by the government against the debtor. This analysis does not hold true in a Chapter 13 case where the debtor receives a § 1328(a) discharge.

Applying the literal reading of the statute only § 507(a)(7)(A)(i) income taxes where a return was due within three years before the filing of the petition, May 3, 1993 are afford-ed priority treatment which in this case includes tax liabilities for calendar years 1990, 1991 and 1992.

It is therefore ORDERED that the debtor's objection to the claim of the IRS is sustained in part as it pertains to the priority treatment claimed for 1989 estimated tax liabilities in the amount of $5,037.00. The amount of the allowed claims and treatment afforded the claims are ORDERED as follows: unsecured priority claim $26,388.85 and general unsecured claim $8,207.41.[6]

### ORDER ON RECONSIDERATION

By motion filed April 6, 1994 the respondent United States of America acting by and through the Internal Revenue Service ("IRS") seeks reconsideration of that portion of my order entered March 30, 1994 in which I did not afford unsecured priority treatment to the tax liability of the debtor for 1989. The motion is considered a motion to amend my findings and judgment in accordance with Federal Rule of Bankruptcy Procedure 7052 incorporating Federal Rule of Civil Procedure 52(b). At confirmation hearing held April 25, 1994 the debtor was given two (2) weeks to respond to the IRS's motion. The debtor did not respond.

The motion having been read and considered and for good cause shown is granted. The order entered March 30, 1994 is ORDERED amended overruling the debtor's objection to the claim of the IRS to priority treatment claim for 1989 estimated tax liability in the amount of Five Thousand Thirty Seven and No/100 ($5,037.00) Dollars. The amount of the allowed claims and treatment afforded the claims are ORDERED as follows: unsecured priority claim Thirty–One Thousand Four Hundred Twenty–Five and 85/100 ($31,425.85) Dollars and general unsecured claim Three Thousand One Hundred Seventy and 41/100 ($3,170.41) Dollars. All other findings made in the March 30, 1994 order remain as stated.

---

6. This order does not address the confirmability under § 1325 of a plan which attempts to dis-charge unknown tax liabilities based upon the debtor's failure to file required tax returns.