**In the Matter of Dudley & Karen ZIEG, Debtors.**

**Bankruptcy No. BK91–80121.**
**Filing Nos. 50, 53 (48, 54).**

United States Bankruptcy Court,
D. Nebraska.

Jan. 11, 1996.

James Woodruff, for Nebraska Department of Revenue.

Dean Jungers, Bellevue, NE, for debtors.

Robert Metcalfe, Washington, DC, for US, IRS.

Kathleen Laughlin, Chapter 13 Trustee.

*MEMORANDUM OPINION*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on Objection to Claim of United States of America, Internal Revenue Service and on Objection to Claim of Nebraska Department of Revenue filed by Debtors on December 4, 1995. Appearances: Dean Jungers, attorney for debtors; Robert Metcalfe, attorney for United States of America, IRS; and James Woodruff, attorney for Nebraska Department of Revenue. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

### Issue

In a Chapter 13 case are prepetition tax obligations with respect to which the debtors made a fraudulent return or willfully attempted to evade the tax, entitled to treatment as a priority unsecured claim under 11 U.S.C. § 507(a)(8)?

### Decision

Such tax obligations do not receive priority under § 507(a)(8), and such tax obligations, as general unsecured claims, are dischargeable in a Chapter 13 case.

### Background

The debtors, Dudley and Karen Zieg, filed a petition for Chapter 13 bankruptcy relief on January 17, 1991. Filing no. 1. The Internal Revenue Service (IRS) and the Nebraska Department of Revenue (Nebraska) filed proofs of claims for income taxes due on income earned through embezzlement, but not claimed on tax returns filed for the tax years 1986 through 1989. The IRS's claim was allowed as an unsecured priority tax claim in the amount of $28,353.77, and Nebraska's claim was allowed as an unsecured priority tax claim in the amount of $9,168.75 because no objections to the amount or character of the claims were filed prior to the local procedure bar date.

The debtors' Chapter 13 plan, as confirmed, proposed to pay in full all priority claims under 11 U.S.C. § 507. However, neither the original or amended schedules, nor the plan itself acknowledged the liabilities due for 1986 taxes as priority claims. The debtors have only acknowledged that the outstanding tax liabilities for 1987 through 1989 were priority claims.

The debtors objected to the claims of Nebraska and the IRS on September 27, 1995. Although the objections were filed long after the bar date provided by local procedure, 11

U.S.C. § 502(j) and Federal Bankruptcy Rule 3008 permit the court to reconsider the allowance of claims at anytime for cause. *See* 11 U.S.C. § 502(j), FED.R.BANKR.P. 3008. Pursuant to the authority of that statute and rule, the court has entertained these objections.

The debtors allege that the unsecured claims of the IRS and Nebraska for 1986 income taxes are not entitled to priority under 11 U.S.C. § 507(a)(8)(A) because the taxes were due more than three years prior to the filing of the Chapter 13 petition and because no priority is granted to tax obligations with respect to which a fraudulent return was filed, or the taxpayer attempted to evade payment. The IRS resisted on the ground that its claim for 1986 income taxes is entitled to priority status under 11 U.S.C. § 507(a)(8)(A)(iii) because 26 U.S.C. § 6501(e)(1)(A) of the Internal Revenue Code (IRC) creates an exception to the three year statute of limitations by extending to six years the time for assessment of taxes related to income omitted from tax returns that is greater than 25% of income claimed in the timely return. Nebraska asserted the identical argument and cited the six year statute for assessment of taxes related to omitted income under Nebraska statute Section 77–2786(2). NEB.REV.STAT. § 77–2786(2) (Reissue 1990). The IRS and Nebraska also assert that the confirmed Chapter 13 plan provides that the tax authorities have priority unsecured claims. The IRS and Nebraska shall be collectively referred to as the "tax authorities."

### Statutory Authority

Section 507(a)(8)(A)(iii) generally provides that unsecured claims of tax authorities are entitled to priority status and that the following tax claims are allowed as priority claims:

(8) Eighth, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(iii) other than tax of a kind specified in ... 523(a)(1)(C) of this title, not assessed before, but assessable under ap-plicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(8)(A)(iii).

In Chapter 7, 11, and 12 individual cases, Section 523(a)(1)(C) denies a discharge for the following types of taxes: "(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). In Chapter 13 cases, Section 523(a)(1)(C) taxes are nondischargeable under Section 1328(b), the hardship discharge, but are dischargeable under Section 1328(a), the general discharge provision under Chapter 13 which applies in this case. *See,* 11 U.S.C. §§ 523(a), 1328(a), (b).

The claims by the tax authorities for taxes for embezzlement are entitled to priority unsecured status if the tax debts have not been assessed, but were assessable, prior to the petition date. The general rule under the IRC is that "the amount of any tax imposed by [Title 26] shall be assessed within 3 years after the return was filed...." 26 U.S.C. § 6501(a). However, there is an exception to the three year rule in Section 6501(e)(1)(A), which provides:

**(A) General Rule.**—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.

26 U.S.C. § 6501(e)(1)(A).

Nebraska law contains similar provisions. Section 77–2786(1) sets forth the general rule, which states: "[A] notice of a proposed deficiency determination shall be mailed to the taxpayer within three years after the return was filed." NEB.REV.STAT. § 77–2786(1) (Reissue 1992). Subpart (2) of the Section 77–2786 provides for a six year exception:

(2) If the taxpayer omits from Nebraska taxable income an amount properly includable therein which is in excess of twenty-five percent of the amount of taxable income stated in the return or a corporate

return omits a properly includable member of the unitary group as defined in section 77–2734.04, a notice of a deficiency determination may be mailed to the taxpayer within six years after the return was filed. NEB.REV.STAT. § 77–2786 (Reissue 1990). Thus, the tax authorities argue that the 1986 taxes in question are entitled to priority status because the taxes were assessable on the date of the petition because of the six year statute of limitations for omitted income earned through embezzlement.

## Discussion

### A. *Applicable Statute of Limitation for Assessment*

■ The Supreme Court has ruled that 26 U.S.C. § 6501(e) should be read strictly in favor of the government. *Wines v. United States,* 1992 WL 200602, *5 (S.D.Fla. April 8, 1992) (quoting *Badaracco v. Commissioner,* 464 U.S. 386, 391–92, 104 S.Ct. 756, 760–61, 78 L.Ed.2d 549 (1984)). The taxing authorities bear the burden of showing by a preponderance of the evidence that the six year statute of limitations applies. *Wines,* 1992 WL 200602, at *6 (quotations and citations omitted).

■ The IRS has established that the income omitted from the debtors' 1986 tax returns exceeds by more than 25% the income actually claimed in their 1986 tax returns. The Notice of Deficiency shows that the debtors had an additional $25,510 from embezzlement income which was not claimed in 1986. Nebraska has also submitted evidence regarding how it determined the debtors' liability for 1986 taxes. Nebraska noted that it has been delayed from assessing the taxes because the source of their information, the IRS, has been subject to the bankruptcy stay. The debtors admitted in their schedules that their additional Nebraska tax liabilities for 1986 through 1990, totaled $6,100.00. Even though the debtors apparently have not agreed to the figures calculated by the tax authorities, the debtors have not filed amended returns showing the income embezzled during 1986 and have not submitted any evidence in opposition to the tax authorities' calculations.

The tax authorities have met their burden and have shown that the six year statute of limitations applies to this case because the embezzled income of the debtors, which was not claimed on their 1986 tax returns, is greater than 25% of the income actually claimed in 1986. Therefore, the six year statute of limitations under state and federal law applies to determine assessability under Section 507(a)(8)(A)(iii). The tax liabilities for 1986 income tax on the embezzled income was assessable on the date the Chapter 13 petition was filed.

### B. *Impact of § 523(a)(1)(C) on Priority of Tax Claim*

The debtors' remaining argument is that the tax authorities claims for 1986 taxes are not entitled to priority in Chapter 13 cases because the claims for 1986 taxes are excluded from priority under Section 507(a)(8)(A)(iii) through Section 523(a)(1)(C). The debtors admit that the omitted income was "willfully" omitted and the return was "fraudulent" as those terms are used in Section 523(a)(1)(C), and therefore, they argue that the tax claims should be excluded from priority at Section 507(a)(8)(A)(iii). Even though the dischargeability of the taxes under Section 523(a)(1)(C) is not relevant because of the super-discharge provision at Section 1328(a), the debtors argue that Section 523 is relevant because Section 507(a)(8)(A)(iii) by referring to Section 523(a)(1)(C), identifies a type of tax that does not receive priority status. That type of tax is with respect to which the debtors filed a fraudulent return or willfully attempted to evade.

Bankruptcy courts which have considered whether tax claims of the type described in Section 523(a)(1)(C) are entitled to priority under Section 507(a)(8)(A)(iii) in Chapter 13 cases have concluded the following: "From the clear language of the Bankruptcy Code, tax fraud claims are not afforded priority in Chapter 13 cases. 11 U.S.C. § 507(a) [ (80 ](A)(iii)." [1] *In re Verdunn,* 160 B.R.

---

**1.** § 507(a)(8) was originally numbered at § 507(a)(6) and later at § 507(a)(7). The Bank-

ruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, added a new catego-

682, 685 (Bankr.M.D.Fla.1993); *In re Dwyer*, 1993 WL 596259, (Bankr.M.D.Fla. Oct. 14, 1993); *see also Daniel v. United States (In re Daniel)*, 170 B.R. 466, 470–71 (Bankr. S.D.Ga.1994) (holding in Chapter 13 case that taxes specified in § 523(a)(1)(B) and (C) are excluded from priority status under § 507(a)(8)(A)(iii), but not from (i) or (ii) of § 507(a)(8)); *Muina v. United States (In re Muina)*, 75 B.R. 192, 193 (Bankr.S.D.Fla. 1987) (holding in Chapter 13 case that the language of § 507(a)(8)(A)(iii) specifically excludes the taxes specified in § 523(a)(1)(C)); *Torrente v. United States (In re Torrente)*, 75 B.R. 193 (Bankr.S.D.Fla.1987) (holding in Chapter 13 case that since the tax in question was not the type of tax specified within § 523(a)(1)(B), the claim was not excepted from priority treatment under § 507).

While this conclusion may at first appear inequitable, the position of the debtors is most in accord with the plain language of both Section 507(a)(8)(A)(iii) and Section 523(a)(1)(c). In a Chapter 7 case, one bankruptcy court noted how the legislative history of the Bankruptcy Code addressed the interplay between Section 507(a)(8)(A)(iii) and Section 523(a)(1)(C):

> Taxes that are excepted from discharge under S. 2266 (as well as under present law) include claims against the debtor which receive priority in distribution of property of the estate.

> Certain prepetition tax liabilities are not given priority in distribution from property of the estate, but under S. 2266 would survive as liabilities of the debtor after the case. This category includes (1) taxes for which the debtor had not filed a return as of the bankruptcy petition, or for which a return had been filed beyond its due date but within three years before the petition, and (2) taxes with respect to which the debtor filed a fraudulent return, or as to which he fraudulently attempted to evade or defeat any tax.

The bankruptcy policy for this treatment is that is *not fair to penalize private creditors of the debtor by paying out of the "pot" of assets the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kind of taxes. Therefore, these taxes have no priority in payment from the estate but would survive as continuing debts after the case.* (Not giving priority to a debt means that the creditor can still collect part or all of the debt from the estate, but the creditor must do so as a general creditor, sharing pro rate with other general creditors.).

*In re Edwards*, 74 B.R. 661, 665 & n. 19 (Bankr.N.D.Ohio 1987) (quoting S.Rep. No. 1106, 95th Cong., 2d Sess. 22 (1978) (emphasis added by *Edwards*); *Daniel v. United States (In re Daniel)*, 170 B.R. 466, 470 (Bankr.S.D.Ga.1994).

In Chapter 7, the Section 523(a)(1)(C) tax debt for a fraudulent return is nondischargeable, and therefore, a tax authority can pursue a debtor after the bankruptcy case. In Chapter 13, however, Section 1328(a) would cause this type of debt to be dischargeable. The tax authorities argue here, and apparently argued in the cited cases, that such a result is unfair and illogical, because the debtor is "escaping" from tax liabilities incurred by misconduct. However, as at least one other court has noted, this result is not inconsistent with the result of application of other statutory sections in Chapter 13 cases. The *Verdunn* court discussed the impact of denying priority under Section 507(a)(8)(A)(iii) to taxes specified in Section 523(a)(1)(B) and (C) and noted the end result of causing the tax to be a dischargeable general unsecured debt was not unique in the Chapter 13 context:

> Yet, this is not the first unusual result in Chapter 13 addressed by Congress. Prior to November 15, 1990, a drunk driver could escape payment of a civil judgment by filing under Chapter 13. Congress re-

---

ry of priority claims and as a result, § 507(a)(6) was renumbered as § 507(a)(7). The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, inserted categories of priority to § 507(a) which renumbered § 507(a)(7) to § 507(a)(8). Neither

renumbering amended the contents of the provision. Discussion of case law in this Memorandum shall universally refer to § 507(a)(8), but the actual case cited may use § 507(a)(6) or (a)(7).

sponded to the problem. Pub.L. 101–581, Nov. 15, 1990 (adding § 1328(c)(2)). Although not dischargeable under Chapter 7, student loans were not exceptions to discharge until Subsection (a)(2) of 11 U.S.C. § 1328 was amended by the Student Loan Default Prevention Initiative Act of 1990. Pub.L. 101–508, Nov. 5, 1990 (as part of the Omnibus Reconciliation Act). In addition, convicted felons were permitted to discharge their restitution obligations to victims or the State, merely by filing a Chapter 13. Thereafter, Chapter 13 was amended to make criminal restitution nondischargeable. Criminal Victims Protection Act, Pub.L. 101–581, § 3, 104 Stat. 2865 (Nov. 15, 1990) (adding § 1328(c)(3)). 160 B.R. at 685 (case citations and footnote omitted).

■ It is apparent that in the history of Chapter 13 several times a situation has arisen where the discharge of a debt in Chapter 13 has resulted in an unfair or unpopular result, and Congress has acted to amend the Bankruptcy Code. Congress has not, however, acted to make claims due for a fraudulent return nondischargeable in Chapter 13. Such inaction is not necessarily inconsistent with the original Congressional policy in creating a broader discharge under Chapter 13, which was to encourage debtors to select Chapter 13 and pay creditors something over a number of years, rather than selecting a Chapter 7 liquidation and pay nontax creditors nothing. *In re Miller*, 100 B.R. 898, 900 (Bankr.N.D.Ohio 1989) (citing H.R.REP. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078.).

■ The tax authorities' response to this argument is that none of the discussion about the Chapter 13 discharge is relevant to determine the respective priorities of the claims for 1986 taxes. However, to disregard these portions of the Bankruptcy Code would render the reference to Section 523(a)(1)(C) in Section 507(a)(8)(A)(iii) superfluous in the Chapter 13 context. Section 507(a)(8)(A)(iii) has not been excluded from applying to Chapter 13. Section 507(a)(8)(A)(iii) must, therefore, be applicable in Chapter 13 cases. The statutory language, "tax of a kind specified in section ... 523(a)(1)(C)," is plain language and refers to the type of taxes listed in Section 523(a)(1)(C), not to the dischargeability or nondischargeability status of those taxes. *See Verdunn,* 160 B.R. at 685 ("It is up to Congress to change this result [of excluding § 523(a)(1)(C) from priority at § 507(a)(8)(A)(iii), not this Court.").

The plan that was confirmed in this case, without objection by the tax authorities, provides that priority claims will be paid in full. It further provides no payments will be made on general unsecured claims except the court ordered restitution claim of a credit union. The debtors' amended schedules state that only 1987 through 1989 taxes were entitled to priority. The original petition and schedules lists 1986 taxes on embezzled income as a debt of the estate. Since 1986 tax obligations were scheduled, but only 1987 through 1989 taxes were listed as priority, the tax authorities' claims for 1986 taxes were treated in the plan as general unsecured claims, which are dischargeable under Section 1328(a).

### Conclusion

The objection to the priority status of the 1986 federal and state tax obligations is sustained.

Separate journal entry to be entered.