**In the Matter of Dudley D. ZIEG and Karen A. Zieg, Debtors.**

**UNITED STATES of America, Appellant,**

v.

**Dudley D. ZIEG and Karen A. Zieg, Appellants.**

No. 8:CV9600172.
BK. No. 91–80121.

United States District Court, D. Nebraska.

Jan. 14, 1997.

Laurie M. Barrett, Asst. U.S. Atty., Omaha, NE, Robert D. Metcalfe, U.S. Department of Justice, Tax Division, Washington, DC, for U.S.

James M. Woodruff, Nebraska Department of Revenue, Lincoln, NE, for Nebraska Department of Revenue.

Dean J. Jungers, Hascall, Jungers Law Firm, Bellevue, NE, for Dudley D. Zieg and Karen A. Zieg.

Kathleen A. Laughlin, Trustee, Omaha, NE.

## MEMORANDUM OPINION

STROM, Senior District Judge.

This matter is before the Court on the United States' notice of appeal (Filing No. 2). After careful consideration of the record on appeal, the briefs and the applicable law, the Court finds that the case should be affirmed.

### STANDARD OF REVIEW

A district court acts as an appellate court when reviewing a bankruptcy court's decision. A district court reviews a bankruptcy court's legal conclusions de novo and its factual findings under the clearly erroneous standard. *In re Miller,* 16 F.3d 240,

242–43 (8th Cir.1994). A bankruptcy court's finding of fact is clearly erroneous when, although there is evidence to support the finding, the district court, on the entire record, is left with a definite and firm conviction that a mistake has been made. *In re Rape,* 104 B.R. 741, 747 (W.D.N.C.1989). The appellant bears the burden of proving that the bankruptcy court's determination was clearly erroneous. *Id.* at 748. The Court reviews the government's notice of appeal in light of the foregoing standard.

## BACKGROUND

The facts of this case are largely undisputed. On January 17, 1991, debtors Dudley and Karen Zieg filed a petition for Chapter 13 bankruptcy relief. The Internal Revenue Service ("IRS") and the Nebraska Department of Revenue filed proofs of claims for income taxes due on unpaid income for the tax years 1986 through 1989.[1] The IRS' claim was allowed as an unsecured priority tax claim in the amount of $28,353.77. Later, the IRS amended its proof of claim that reduced the debtors' 1986–1989 tax liabilities to $22,296.97.

The debtors' amended Chapter 13 plan was confirmed August 15, 1991. The confirmed plan proposed to pay in full all priority claims under 11 U.S.C. § 507. After determining that the amended plan was underfunded, the trustee filed a motion to increase payments or extend length of plan. The debtors resisted the trustee's motion, and further asked the bankruptcy court for leave to file an objection to the tax claims. The bankruptcy court allowed the debtors to file a motion to reconsider the previously allowed priority tax claims. Consequently, the debtors filed an objection to the IRS' tax claims, asserting that the 1986 and 1987 tax claims were not priority claims but were unsecured general claims. The IRS resisted debtors' objection, and the bankruptcy court held a hearing on the objection and resistance on December 4, 1995. Because the debtors eventually acknowledged that

the tax liabilities for the tax year 1987 are priority claims, the only issue is whether debtors' 1986 tax liabilities are priority claims. The government contends that the debtors embezzled about $25,000 in 1986 but did not pay income taxes on the $25,000. For their part, debtors admit that they received about $25,000 of embezzlement income in 1986, and furthermore, that they filed a fraudulent 1986 income tax return and willfully omitted the embezzlement income from their tax return.

In a published opinion, the bankruptcy court ruled that there was a three-year statute of limitations in which the IRS has to assess income taxes omitted from tax returns. *In re Zieg,* 194 B.R. 469, 471 (Bankr. D.Neb.1996) (citing 26 U.S.C. § 6501(a)). However, if the omitted income exceeds the income actually reported by more than 25%, then the statute of limitations is extended to six years. *Id.* (citing 26 U.S.C. § 6501(e)(1)(A)). The bankruptcy court found that the IRS established "that the income omitted from the debtors' 1986 tax returns exceed[ed] by more than 25% the income actually claimed in their 1986 tax returns." *Id.* at 472. Thus, the bankruptcy court found that the six-year statute of limitations applied. The parties do not dispute the bankruptcy court's finding on this issue.

The bankruptcy court next considered whether priority was granted to tax claims with respect to which a fraudulent return was filed, or the debtor attempted to evade payment. *Id.* at 472–74. The bankruptcy court read 11 U.S.C. § 507(a)(8)(A)(iii) and 11 U.S.C. § 523(a)(1)(C) together and concluded that tax claims as a rule are priority claims. The bankruptcy court further concluded, however, that there was no priority for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." *See* § 523(a)(1)(C).

Based on the debtors' admissions, the bankruptcy court found that the debtors "willfully" omitted the embezzlement income

---

1. The Nebraska Department of Revenue did not      appeal the bankruptcy court's ruling.

from their 1986 tax return, and that the debtors filed a fraudulent tax return for 1986. Applying the law to the facts, the bankruptcy court concluded that the IRS' tax claim for the unpaid 1986 tax was not a priority claim. Accordingly, the bankruptcy court sustained debtors' objection, and reclassified the previously allowed priority tax claim for 1986 as a general unsecured claim.

The government filed this appeal, complaining that debtors cannot use the bankruptcy code to escape their tax liabilities by simply admitting they filed a fraudulent tax return. In the alternative, the government contends that the bankruptcy court made an erroneous factual finding that the debtors' 1986 tax return was fraudulent. Finally, the government claims the bankruptcy court erred in allowing the debtors to challenge the classification of the IRS' claim given the August 15, 1991 final order of confirmation.

## DISCUSSION

■ The government first argues that it is inequitable for the debtors to use the bankruptcy code to benefit from their embezzlement. The government argues that § 523(a)(1)(C) is a statute that can be used by the government but not debtors. As pointed out by the government, typically it is the debtor who seeks a discharge of debt in connection with a fraudulent tax return, and it is the government who typically raises the issue that the debt is not dischargeable pursuant to § 523(a)(1)(C). Normally, the government must show that the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat a tax.

The Court does not dispute that this is the normal operation of § 523(a)(1)(C). However, as the bankruptcy court noted, to accept the government's argument would render § 507(a)(8)(A)(iii) meaningless in a Chapter 13 context. See Zieg, 194 B.R. at 474. The bankruptcy code provides that tax liabilities are entitled to priority:

2. The government argues that these cases are factually distinct from the case at bar. However, in these cases, the courts interpreted the statutes

[O]nly to the extent that such claims are for a tax on ... income ... other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

11 U.S.C. § 507(a)(8)(A)(iii). Relevant here, § 523(a)(1)(C) refers to a claim for taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Therefore, in plain language, the bankruptcy code excludes a fraud tax claim from being a priority claim.

The bankruptcy court properly found that tax of a kind specified in § 523(a)(1)(C) is not entitled to priority. The bankruptcy court also noted that other courts have reached the same conclusion. See 194 B.R. at 472–73 (citing In re Verdunn, 160 B.R. 682, 685 (Bankr.M.D.Fla.1993); In re Dwyer, 1993 WL 596259 (Bankr.M.D.Fla.1993)) (other citations omitted).[2] Notwithstanding the bankruptcy court's interpretation of the statutes' plain language, and the fact that other courts have reached the same conclusion, the government argues that the bankruptcy court's decision produces a perverse result in that debtors can benefit from their fraud and avoid paying their income tax debt. While this may be the effect of the bankruptcy court's ruling, the Court agrees with the bankruptcy court's finding that the bankruptcy code has produced similar seemingly inequitable results. See Zieg, 194 B.R. at 473–74 (citing Verdunn, 160 B.R. at 685). Moreover, in those instances, Congress corrected the inequity. See id. at 474. Therefore, the bankruptcy court was correct in finding that if the law needs to be changed, Congress must change the law. That is not the job of the courts. Accordingly, based on the plain language of the bankruptcy code, taxes of the kind specified in § 523(a)(1)(C) are not entitled to priority.

■ Finding that taxes specified in § 523(a)(1)(C) are not entitled to priority,

in the same way; that is, the bankruptcy code excludes a fraud tax claim from being a priority claim.

however, does not end the Court's inquiry. The government next argues that if the income tax claim is not entitled to priority, the bankruptcy court nonetheless made an erroneous factual finding that debtors' 1986 income tax return was fraudulent. The Court reviews this factual finding under the clearly erroneous standard.

The bankruptcy court found that debtors' 1986 income tax return was fraudulent based on the debtors' admissions. *Zieg,* 194 B.R. at 472. The government argues that except for these admissions, there is no evidence to support the bankruptcy court's finding. The Court, however, notes that to support its argument, the government provides equally self-serving evidence. For example, to persuade the Court to find that debtors did not file a fraudulent 1986 return, the government argues that it never tried to assert a fraud penalty against the debtors. The government suggests that if it did not assert a fraud penalty against the debtors, then *ipso facto* debtors could not have committed tax fraud. The Court disagrees.

The government further claims that none of the "badges of fraud" are present here. When there is no direct evidence of fraud, the badges of fraud helps courts determine whether fraud exists through circumstantial evidence. However, the Court does not have to look for any circumstantial evidence. The debtors have admitted that they filed a fraudulent tax return. The fact that the IRS never asserted a fraud penalty against the debtors does not impeach the debtors' admissions. Accordingly, the government has not shown that the bankruptcy court's factual finding was clearly erroneous.

■ Finally, the government claims that the bankruptcy court improperly allowed the debtors to challenge the classification of the government's claim as a priority tax claim. The government argues that 11 U.S.C. § 1327(a) provides that the confirmation of a Chapter 13 plan is binding on creditor and debtor alike. The government further argues that 11 U.S.C. § 1329(a) bars a party from modifying the plan except in limited

circumstances not applicable here. The Court agrees with the government's reading of § 1329(a). However, the government's argument is misplaced because the bankruptcy court based its ruling on 11 U.S.C. § 502(j) rather than § 1329(a).

■ In relevant part, § 502(j) provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." Importantly, a motion for reconsideration can be filed at any time before the case is closed. *See In re Lee,* 189 B.R. 692, 695 (Bankr. M.D.Tenn.1995) (citations omitted). Therefore, the bankruptcy court may consider a § 502(j) motion even after a Chapter 13 plan has been confirmed. *See id.*

In this case, the debtors filed an Objection to Claims of Internal Revenue Service. The bankruptcy court never expressly referred to debtors' objection as a motion for reconsideration, but it is clear that it considered the objection as a motion for reconsideration. *See* 194 B.R. at 471; *see also* Bankruptcy Court Filing No. 45 (order granting debtors leave to file a motion to reconsider). It is equally clear that § 1327(a) does not bar a bankruptcy court from reconsidering an allowed claim under § 502(j). *In re Bernard,* 189 B.R. 1017, 1021–22 (Bankr.N.D.Ga.1996). Accordingly, it was not improper for the bankruptcy court to reconsider the tax claim under § 502(j).

## CONCLUSION

For the reasons stated, the Court will affirm the bankruptcy court's decision. A separate order will be entered in accordance with this opinion.