**In re Michael J. SAVARIA; Kelli A. Boyer, Debtors.**

**Michael J. Savaria; Kelli A. Boyer, Appellants,**

v.

**United States; Robert G. Drummond, Chapter 13 Trustee, Appellees.**

**BAP No. MT–04–1136–KSB.**

**Bankruptcy No. 02–61313–13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued by Video Conference and Submitted on Sept. 22, 2004.

Filed Nov. 10, 2004.

James A. Patten, Patten, Peterman, Bekkedahl & Green, P.L.L.C., Billings, MT, for Michael and Kelli Savaria.

Victoria L. Francis, Assistant U.S. Attorney, Billings, MT, for United States.

Before KLEIN, SMITH, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This appeal involves what courts of appeal have described as the Bankruptcy Code's "delicate balance" between priority status for taxes and discharge of taxes and whether that balance shifts when delinquent tax returns are filed *after* bankruptcy is filed.

The Internal Revenue Service argues that tax debt that is nondischargeable and not entitled to priority as of the date of the filing of bankruptcy becomes dischargeable priority debt by virtue of postpetition filing of a late return.

We conclude that 11 U.S.C. § 523(a)(1)(B)(ii), which excepts tax debt from discharge when it is based on a late return filed "after two years before the date of the filing of the petition," applies to postpetition filing of a late return for prepetition taxes. Since the bankruptcy distribution priority created by 11 U.S.C. § 507(a)(8)(A)(iii) and the exception to discharge created by § 523(a)(1)(B) are mutually exclusive, it follows that the postpetition filing of a late income tax return does not promote the tax debt to priority status.

Accordingly, we REVERSE the bankruptcy court's order overruling the debtors' objection to priority status for the claim of the Internal Revenue Service.

## FACTS

The debtors, Michael Savaria and Kelli Boyer, filed a chapter 13 bankruptcy on December 31, 2002. Boyer had not filed income tax returns for 1997–2001; Savaria was similarly delinquent for 1996–2001.

They filed all delinquent tax returns on August 6, 2003, because they understood that the presiding bankruptcy judge requires that tax returns be current before confirming a plan.

The IRS assessed the taxes, amending its filed claim to $40,446.35: $30,257.30 priority (including $18,743.96 for 1996–1998); and $10,189.05 in nonpriority penalties.

The debtors objected to the IRS claim to the extent of the $18,743.96 priority status claimed for tax years 1996–1998.

The court tried the objection on stipulated facts and upheld priority treatment under § 507(a)(8)(A)(iii) for 1996–1998 taxes.

This appeal is from the order overruling the objection.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether postpetition filing of returns for delinquent prepetition income taxes affects dischargeability status under § 523(a)(1)(B).

2. Whether postpetition filing of returns for income taxes that are otherwise nondischargeable under § 523(a)(1)(B) disqualifies them from nondischargeable status and, thereby, entitles them to priority status under § 507(a)(8)(A)(iii).

## STANDARD OF REVIEW

■ We review statutory construction questions de novo. *Duffy v. Dwyer (In re Dwyer)*, 303 B.R. 437, 439 (9th Cir. BAP 2003).

## DISCUSSION

What is at stake is whether the $18,743.96 portion of the IRS claim attributable to 1996–1998 income taxes must be paid in full as a § 507 priority debt under a chapter 13 plan or, instead, may be treated as general unsecured debt to be paid pro rata and discharged if the plan is fully performed.

Discerning the correct answer requires consideration of the Bankruptcy Code's structure for dealing with taxes, as implemented primarily in the priority provisions of § 507(a)(8) and the nondischargeability provisions of § 523(a)(1), which have been described as creating "a 'delicate balance' between priority and discharge of tax claims." *West v. United States (In re West)*, 5 F.3d 423, 426 (9th Cir.1993) (Hall, J.), *quoting In re Official Committee of Unsecured Creditors of White Farm Equip. Co.*, 943 F.2d 752 (7th Cir.1991).

### I

The delicate balance that is reflected by the priority and the nondischargeability provisions addresses a three-way tension among the interests of: (1) the public in collecting taxes; (2) the general creditors who lose out to excessive tax accumulation; and (3) the debtor in achieving a fresh start. S.Rep. No. 95–989, at 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800, *and reprinted in* D COLLIER ON BANKRUPTCY at App. Pt. 4–1944 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2004) ("COLLIER").

One must also bear in mind that this analysis focuses on unsecured tax claims.

A taxing authority that has proceeded to the point of obtaining a lien, will be treated as a secured creditor that is entitled to its security. Thus, when one speaks of taxes in such terms as "stale," one is speaking about taxes with respect to which there has not been sufficient enforcement to achieve lien status.

Taxes that have not grown so stale as to constitute what Congress deemed to be an unjustifiable burden on unsecured creditors are afforded priority status and, to the extent not paid, are nondischargeable. *Compare* 11 U.S.C. § 507(a)(8)(A), *with id.* § 523(a)(1)(A).

Taxes that are deemed stale are not afforded priority status and generally are dischargeable. *Id.*

When stale taxes are neither priority nor dischargeable, some fault—unfiled, late, or fraudulent returns—can be ascribed to the debtor. *Compare* 11 U.S.C. § 507(a)(8)(A)(iii), *with id.* § 523(a)(1)(B)-

(C); S.Rep. No. 95–989, at 14, *reprinted in* 1978 U.S.C.C.A.N. at 5800, *and reprinted in* D COLLIER at App. Pt. 4–1944.[1]

This last rule is implemented by § 507(a)(8)(A)(iii), which affords priority status to prebankruptcy income taxes that become assessable after the bankruptcy case filing unless they are both stale and nondischargeable because of some fault ascribed to the debtor. This is accomplished by making the nondischargeability provisions § 523(a)(1)(B)-(C) mutually exclusive from the priority provided by § 507(a)(8)(A)(iii):

> (A) a tax on or measured by income or gross receipts—... (iii) *other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title*, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

11 U.S.C. § 507(a)(8)(A)(iii) (emphasis supplied).[2]

---

**1.** The Senate Judiciary Committee explained:
> In general, tax claims which are nondischargeable, despite a lack of priority, are those to whose staleness the debtor contributed by some wrong-doing or serious fault as, for example, taxes with respect to which the debtor filed a fraudulent return.

S. Rep. No. 95–989, at 14, *reprinted in* 1978 U.S.C.C.A.N. at 5800, *and reprinted in* D COLLIER at App. Pt. 4–1944.

The Senate Finance Committee was even more explicit:
> The bankruptcy policy for this treatment is that it is not fair to penalize private creditors of the debtor by paying out of the "pot" of assets in the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kinds of taxes. Therefore, these taxes have no priority in payment from the estate but would survive as continuing debts after the case. (Not giving priority to a debt means that the creditor can still collect part or all of the debt from the estate, but the creditor must do so as a general creditor, sharing pro rata with other general creditors.)

S. Rep. No. 95–1106 22 (1978), *reprinted in* D COLLIER at App. Pt. 4–2168; *Edwards v. IRS (In re Edwards)*, 74 B.R. 661, 665 (Bankr. N.D.Ohio 1987).

**2.** The complete § 507(a)(8)(A) priority for income tax is:
> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
> (A) a tax on or measured by income or gross receipts—
> (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
> (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

The parties agree that the sole basis available for ascribing priority status to the $18,743.96 attributable to 1996–1998 income taxes in this case is § 507(a)(8)(A)(iii).[3]

Since the nondischargeability provision of § 523(a)(1)(B) and the § 507(a)(8)(A)(iii) priority are mutually exclusive, the question becomes whether the 1996–1998 income taxes that were assessed following the postpetition filing of the relevant tax returns (which are not alleged to have been fraudulent) are nondischargeable under that provision.

## II

Section 523(a)(1)(B) excepts from discharge any debt for a tax or customs duty:

> (B) with respect to which a return, if required—
>
> (i) was not filed; or
>
> (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and *after two years before* the date of the filing of the petition;

11 U.S.C. 523(a)(1)(B) (emphasis supplied).

The essence of this appeal boils down to whether the phrase "after two years before the date of the filing of the petition" means a two-year period that definitively ends with the filing of the petition or, instead, means a period of indefinite duration that begins two years before the filing of the petition.

11 U.S.C. § 507(a)(8)(A).

**3.** Neither of the other bases for § 507(a)(8)(A) priority is available for the 1996–1998 income taxes. The first, which reaches back only three years prepetition, applies only to in-

## A

The status of postpetition returns under § 523(a)(1)(B)(ii) has been infrequently litigated.

The parties cite no decisions directly on point. We note that the Tax Court construed the phrase "after two years before" to encompass postpetition periods and ruled that taxes due with respect to a late income tax return filed three days after the filing of a bankruptcy case are nondischargeable under § 523(a)(1)(B)(ii). *Ramsdell v. Comm'r*, T.C. Memo 2003–317 at n. 10, 2003 WL 22701244 (2003).

## B

Although, as a matter of construing plain language, the statute does not seem to be ambiguous, insights that confirm the plain language meaning may be drawn from the history of the enactment of § 523(a)(1)(B)(ii) in 1978.

The floor statements regarding the final compromise that became § 523(a)(1) in the Bankruptcy Code of 1978 each say:

> Section 523(a)(1) represents a compromise between the position taken in the House bill and the Senate amendment.

124 CONG. REC. S17406, S17412 (daily ed. Oct. 6, 1978) (Statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. at 6521, *and reprinted in* D COLLIER at App. Pt. 4–2556; 124 CONG. REC. H11089, H11095 (daily ed. Sept. 28, 1978) (Statement of Rep. Edwards), *reprinted in* 1978 U.S.C.C.A.N. at 6453, *and reprinted in* D COLLIER at App. Pt. 4–2443.

The "Senate amendment" to which reference is made was the version of § 523(a)(1)(B)(ii) in Senate Bill 2266:

come taxes for 1999–2002. 11 U.S.C. § 507(a)(8)(A)(i). The other applies only to taxes assessed *"before* the date of the filing of the petition."* 11 U.S.C. § 507(a)(8)(A)(ii) (emphasis supplied).

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, if such filing occurred within 3 years before the date of the filing of the petition or thereafter;

S. 2266, § 101, 95th Cong. (1978) (proposed 11 U.S.C. § 523(a)(1)(B)(ii), *reprinted in* C COLLIER at App. Pt. 4–1794).

The Senate Judiciary Committee's description of the proposed § 523(a)(1)(B)(ii) is not ambiguous on the timing question:

The late return rule applies, however, only to the late returns filed within three years before the petition was filed, and to late returns filed after the petition in title 11 was filed.

S.Rep. No. 95–989, at 78 (1978), *reprinted in* 1978 U.S.C.C.A.N. at 5864, *and reprinted in* D COLLIER at App. Pt. 4–2023; *Daniel v. United States (In re Daniel)*, 170 B.R. 466, 470 n. 5 (Bankr.S.D.Ga.1994).

The "House bill" was H.R. 8200, for which the parallel version provided:

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after one year before the date of the filing of the petition;

H.R. 8200, § 101, 95th Cong. (1977) (proposed 11 U.S.C. § 523(a)(1)(B)(ii), *reprinted in* B COLLIER at App. Pt. 4–927).

A fair reading of the compromise is that the difference in timing was resolved by splitting the difference at two years before bankruptcy and that the difference in language was resolved in favor of the House's "after *x* period before" construct that is consistent with, but less cumbersome than, the Senate's "within *x* period before and thereafter" construct.

The question of postpetition tax returns was plainly in view. If the compromise had contemplated excluding postpetition tax returns from coverage by § 523(a)(1)(B), one would expect that the choice would have been to use the "within *x* years before" construct that was also on the table and to eliminate the reference to "thereafter."

One other feature of the 1978 legislative history tends to confirm the conclusion that the construct "after *x* years before" is meant to encompass postpetition periods. The identical phrase is used in 11 U.S.C. § 329(a) relating to examining the debtor's transactions with attorneys. That section was based on former Bankruptcy Act § 60d, which used the construct "whether before or after filing." Bankruptcy Act § 60d, *codified at* 11 U.S.C. § 96(d) (repealed 1978). It, thus, seems apparent that the phrase "after *x* years before" when used in the Bankruptcy Code is meant to encompass postpetition events.

## C

The Supreme Court's decision in *Young v. United States*, 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002), does not compel a different conclusion even though it involves another priority provision that uses the construct "after *x* years before."

The distinction between *Young* and the instant appeal is one of perspective that tends to prove the adage that what you see depends on where you stand. In *Young*, the Supreme Court was looking backwards from the date of filing the petition. We are looking forward.

The question in *Young* was whether the three-year "lookback period" ("after three years before the date of the filing of the petition") in the § 507(a)(8)(A)(i) priority for recent taxes could, under principles of equitable tolling, look back more than three years because the IRS had been stayed by an earlier bankruptcy filing during part of the three years. The Supreme Court concluded that the backward compu-

tation of the date that was three years before the filing of the petition must be extended by the time that the IRS was stayed in a prior bankruptcy from collecting the tax. *Young*, 535 U.S. at 49–51, 122 S.Ct. 1036.

Since a different statutory provision (§ 507(a)(8)(A)(iii)) than that which was construed in *Young* addresses taxes on returns last due after the filing of the petition, *Young* tells us nothing about what happens with the "after *x* years before" construct when one looks forward from the date of the petition. Indeed, the reasoning of *Young* would apply with equal force if the statutory construct had been "within *x* years before."

Thus, *Young* does not support the proposition that the nondischargeability provision of § 523(a)(1)(B)(ii) terminates with the filing of the petition.

### D

There are some other disadvantages that counsel against the construction the IRS urges.

First, the IRS could find itself with a pyrrhic victory. If we were to hold that a postpetition filing of late income tax returns cures the staleness problem so that the tax debt is no longer nondischargeable under § 523(a)(1)(B), the door would be opened to the stratagem of filing a chapter 7 case followed by the filing of late tax returns that would then be discharged in bankruptcy cases under all chapters.

The correlative acquisition of § 507(a)(8)(A)(iii) priority status may be to the advantage of the IRS in a chapter 13 case but would be of little comfort in the typical no-asset chapter 7 cases that predominate within the bankruptcy system.

A second disadvantage with the IRS view is that in chapter 13 cases, where the requirement of full payment of priority claims is often an obstacle to plan confirmation, it would create a disincentive to file delinquent tax returns. We doubt that Congress meant to discourage the filing of tax returns.

If returns are more than three years delinquent and are unfiled as of the date of bankruptcy, the taxes are nondischargeable per § 523(a)(1)(B)(i) and not entitled to priority status. If returns more than three years delinquent are filed the day before bankruptcy, then the taxes are excepted from discharge under § 523(a)(1)(B)(ii) and are not priority. We see no reason why a different result should pertain if such delinquent returns are filed the day after bankruptcy.

### III

◼ Finally, there is the matter of whether the tax debts assessed on late tax returns filed postpetition would be postpetition debts under 11 U.S.C. § 1305(a)(1).

We note for the sake of completeness that the postpetition filing of tax returns that are delinquent as of the date of bankruptcy do not qualify under § 1305(a)(1) as "taxes that become payable to a governmental unit while the case is pending" that could be deemed "postpetition claims" in the chapter 13 case. *See generally* 4 K. LUNDIN, CHAPTER 13 BANKRUPTCY § 302.1, p. 302–2 (3d ed. 2000 & Supp.2004).

There are two schools of thought about when taxes "become payable," each of which leads to the conclusion that the 1996–1998 taxes are not postpetition claims. The first line of cases holds that taxes "become payable" when the final tax return for the tax year is required to be filed, *i.e.*, April 15. *See United States v. Ripley (In re Ripley)*, 926 F.2d 440, 449 (5th Cir.1991); *Pan Am. Van Lines v. United States*, 607 F.2d 1299, 1301 (9th Cir.1979) (per 26 U.S.C. § 6151, "legally

due and owing" means the "tax is due on the date the return is originally due").

The second line of cases holds that taxes "become payable" when the tax year ends, *i.e.*, December 31. *See Dixon v. IRS (In re Dixon)*, 218 B.R. 150, 152–53 (10th Cir. BAP 1998).

Under either analysis, the debtors' 1996–1998 taxes "became payable" either on January 1 or April 15 of each respective following year. Since they filed their bankruptcy case on 12/31/02, under § 1305(a)(1) only the return for 2002 "became payable" while the bankruptcy case was pending.

The fact that the IRS assessed 1996–1998 taxes after the bankruptcy case was filed is of no significance. The burden is on the taxpayer to pay a tax due without an assessment and without notice and demand. 26 U.S.C. § 6151. The taxpayer has a duty to pay and the IRS has a right to payment without assessment. Regardless of when actually assessed, federal taxes are considered to be due and owing, and hence a liability, as of the date the tax return is due. *Pan Am.*, 607 F.2d at 1301; *Vines v. IRS (In re Vines)*, 200 B.R. 940, 947 (M.D.Fla.1996).

Thus, § 1305 is inapplicable under the facts of this case.

### CONCLUSION

The bankruptcy court erred when it granted priority status to the IRS' for 1996–1998 income taxes. The debtors' late filed returns fall squarely within § 523(a)(1)(B)(ii), thus removing it from priority consideration under § 507(a)(8). REVERSED.