**In re Bobbie HARRELL, Debtor.**

**No. 2:03–BK–16983.**

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

Jan. 5, 2005.

---

**52.**   326 U.S. at 625–26, 66 S.Ct. at 449.

**53.**   Reply Brief of United at pg. 9.

G. Gregory Niblock, Niblock & Associates, Stuttgart, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court is an objection to confirmation of the chapter 13 plan proposed by Bobbie Harrell ("Debtor"). The Department of Finance and Administration for the State of Arkansas ("DFA") objects to the plan's treatment of debts owed to DFA for income taxes for the tax years 1996, 1997, and 1998. DFA contends that the Debtor's plan has improperly treated its claims as general unsecured claims when they are actually entitled to priority classification as debts that must be paid in full over the life of the plan.

At the hearing on the objection on October 4, 2004, the parties stipulated to the facts in the case and subsequently submitted post-trial briefs arguing their positions on the issue of whether the tax debts are entitled to priority treatment.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(L), and the Court may enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The Debtor filed her chapter 13 petition for bankruptcy relief on June 10, 2003. DFA was not originally listed as a creditor, but the plan was modified on July 6, 2004, to include DFA as a general unsecured creditor.

Returns for the taxes at issue were due more than three years prior to the bankruptcy petition filing, specifically on May 15 of the tax years 1997, 1998, and 1999. The Debtor filed the returns post-petition on August 4, 2003. The Debtor's modified plan reflects that she owes DFA $14,549.99.

DFA states in its brief that it issued a final assessment for the 1996 income tax on January 8, 2004; for the 1997 income tax on December 25, 2003; and for the 1998 income tax on January 1, 2004. While these facts were not stipulated at trial, the Debtor does not dispute that the assessments occurred post-petition on these dates.

## DISCUSSION

In its post-trial brief, DFA argues that the taxes due for 1996–1998 are entitled to priority treatment by virtue of 11 U.S.C. § 507(a)(8)(A)(iii). The Debtor counters that under the facts of this case, the taxes at issue fail to meet any of the requirements for priority treatment of tax debt under sections 507(a)(8)(A)(i)-(iii). DFA does not contend that the taxes at issue meet the requirements of any provision dealing with priority other than section 507(a)(8)(A)(iii). Therefore, in determining the issue of priority, the Court will confine its discussion to that section of the Bankruptcy Code.

The Bankruptcy Code provides that allowed, unsecured claims of governmental units are entitled to eighth priority if the claims are for a tax on income "other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case." 11 U.S.C.

§ 507(a)(8)(A)(iii)(2000). Section 523(a)(1)(B) refers to income taxes for which a return either was not filed or was untimely filed while section 523(a)(1)(C) deals with debts arising from fraudulent tax returns or willful evasion of taxes.

A leading treatise on bankruptcy explains that subsection 507(a)(8)(A)(iii) gives priority to income tax not assessed before but still assessable after the commencement of the case. However, unassessed but assessable taxes of a kind specified in section 523(a)(1)(B) or (C) are not entitled to priority under section 507(a)(8)(A)(iii). 4 Collier on Bankruptcy ¶ 507.10[2][c] (Alan N. Resnick & Henry J. Sommer *et al.* eds., 15th ed. rev.1993). *See also Vitaliano v. Cal. Franchise Tax Bd. (In re Vitaliano)*, 178 B.R. 205, 208 (9th Cir. BAP 1995) (affirming trial court ruling that assessable taxes not within the definition of section 523(a)(1)(B) or (C) are allowed priority claims under 507(a)(8)(A)(iii)); *In re Williams*, 183 B.R. 43, 46 (Bankr.E.D.N.Y.1995) (ruling that subsection (iii) clearly exempts section 523(a)(1)(B)or(C) taxes from priority) (citing *In re Treister*, 52 B.R. 735, 738 (Bankr. S.D.N.Y.1985), *aff'd*, 188 B.R. 331 (E.D.N.Y.1995)).

With regard to the instant case, two issues must be determined under the statute: whether the taxes at issue were unassessed but assessable under applicable law or by agreement at the commencement of the case and if so, whether the taxes are nevertheless excluded from priority because they meet the section 523(a)(1)(B) or

(C) exceptions to priority classification under section 507(a)(8)(A)(iii).

DFA supports its argument that the taxes at issue were unassessed but assessable upon the commencement of the case by citing Arkansas law. The relevant state law provides: "[N]o assessment of any tax levied under the state tax law shall be made after the expiration of three (3) years from the date the return was required to be filed or the date the return was filed, whichever period expires later." Ark.Code Ann. § 26–18–306 (Michie 1997). DFA had not assessed the taxes on the date the bankruptcy petition was filed. However, pursuant to state law, DFA had three years after the filing of the returns on August 4, 2003, in which to assess the tax. Thus, the taxes at issue were unassessed but still assessable under applicable law when the bankruptcy petition was filed.

The Debtor does not dispute that the taxes were unassessed but assessable when the bankruptcy petition was filed. Instead, she argues that the taxes are excluded from section 507(a)(8)(A)(iii) priority because, even though the taxes were unassessed but assessable, they meet the requirements of the 523(a)(B) exception.[1]

This Code section provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

   (1) for a tax or a customs duty-

   . . .

---

[1] The Debtor also argues that her tax debts are excluded from priority by virtue of section 523(a)(1)(C) in that her failure to file the returns can be deemed a willful attempt to evade the taxes. The parties did not stipulate to the facts necessary to support such a conclusion. Failure to file tax returns is addressed by section 523(a)(1)(B) while section 523(a)(1)(C) requires evidence of willfulness not required by section 523(a)(1)(B). *See May v. Missouri Dept. of Revenue (In re May)*, 251 B.R. 714, 718 (8th Cir. BAP 2000) (stating that circumstances that support a finding of willful attempt to evade taxes include proof of duty to pay, wherewithal to pay, and steps to avoid paying), *aff'd per curiam*, 2 Fed.Appx. 681, 2001 WL 238077 (8th Cir.2001).

(B) with respect to which a return, if required-

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition . . .

11 U.S.C. § 523(a)(1)(B)(i)-(ii) (2000).

Specifically, the Debtor argues that the debts owed to DFA are the kind described by section 523(a)(1)(B)(ii). This provision "extends nondischargeability beyond the failure to file a return at all; it makes nondischargeable taxes for which a return had been filed beyond its last permitted due date . . . if the return is filed less than two years before the bankruptcy petition." 4 Collier on Bankruptcy ¶ 523.07[3][b].

Under chapters 7, 11, and 12 and under the chapter 13 hardship discharge provision, tax debt described by section 523(a)(1)(B)(ii) is excepted from discharge. Therefore, although such debt is not entitled to a priority classification under section 507(a)(8)(A)(iii), it survives the discharge and remains a liability of the debtor after the case is closed.

In a recent opinion from the Bankruptcy Appellate Panel for the Ninth Circuit, the court explained the legislative rationale for not granting the government priority over this nevertheless nondischargeable debt. The court stated,

> The bankruptcy policy for this treatment is that it is not fair to penalize private creditors of the debtor by paying out of the 'pot' of assets in the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kinds of taxes. Therefore, these taxes have no priority in payment from the estate but would

survive as continuing debts after the case.

*Savaria v. United States (In re Savaria),* 317 B.R. 395, n. 1 (9th Cir. BAP 2004)(quoting S.Rep. No. 95-110622 (1978), reprinted in D Collier on Bankruptcy App. Pt. 4-2168; *Edwards v. IRS (In re Edwards),* 74 B.R. 661, 665 (Bankr.N.D.Ohio 1987)).

However, such a debt *will* be discharged under chapter 13, the bankruptcy chapter offering a "super discharge" that eliminates most of the exceptions to discharge detailed in 11 U.S.C. § 523. *See* 11 U.S.C. § 1328(a) (2000)(exceptions to the section 1328(a) discharge do not include tax debts enumerated under section 523(a)(1)(A), (B) or (C)).

Thus, in a chapter 13 case, taxes that are unassessed but assessable but also of a kind described in section 523(a)(1)(B) or (C) are not entitled to priority under section 507(a)(8)(A)(iii) and will also be discharged upon completion of the plan, a result that occurs only in chapter 13. *See, e.g., In re Zieg,* 194 B.R. 469, 474 (Bankr. D.Neb.1996) (ruling that debts for taxes on chapter 13 debtor's embezzled income were of a kind described in section 523(a)(1)(C) and therefore not entitled to priority under section 507(a)(8)(A)(iii) and also dischargeable under the plan as a general unsecured claim); *In re Verdunn,* 160 B.R. 682, 685 (Bankr.M.D.Fla.1993)(stating that the clear language of the bankruptcy code dictates tax fraud claims are not afforded priority under section 507(a)(7)(A)(iii)). *But see In re Norman,* 162 B.R. 581, 582 (Bankr.M.D.Fla.1993) (finding that a chapter 13 plan was not proposed in good faith and denying confirmation where the debtor delayed filing prepetition tax returns until after bankruptcy was filed in order to render tax debts nonpriority).

In *Savaria*, cited above, the Ninth Circuit Bankruptcy Appellate Panel fully examined and explained section 523(a)(1)(B)(ii) in the context of delinquent taxes filed post-petition in a chapter 13 case, the identical scenario in the instant case. The Ninth Circuit BAP reversed the bankruptcy court and concluded that the court erred in granting priority status to delinquent taxes, returns for which were filed post-bankruptcy.

The BAP held that the phrase "after two years before" in section 523(a)(1)(B)(ii) does not denote a two-year period that definitively ends with the filing of the bankruptcy petition. *Savaria*, 317 B.R. at 399–400. Instead, the phrase contemplates a period that begins two years prior to the petition date, extends indefinitely into the future, and thus encompasses the postpetition period.

In the instant case, the debts owed to DFA resulted from delinquent taxes. Returns for those taxes were filed August 4, 2003, which was after the date on which the returns were due under applicable law or under any extension. The returns were filed after June 10, 2001, which is the date that is two years before the petition date of June 10, 2003. Thus, subsection 523(a)(1)(B)(ii) applies to those taxes, and they are excluded from priority treatment under section 507(a)(8)(A)(iii).

Admittedly, the discussion of the interplay of the various sections of the Bankruptcy Code dealing with tax claim priority in chapter 13 is complicated, and the result reached here appears unjust. Because the debt is not entitled to priority classification, the Debtor will be allowed to pay her delinquent tax debt as a general unsecured claim on a pro rata basis and discharge the tax debt that remains at the conclusion of the case.

Bankruptcy courts dealing with section 507(a)(8)(A)(iii) in chapter 13 cases agree that the statute is clear in its intent and concede that only Congress may amend the Bankruptcy Code. In deciding that a chapter 13 debtor was not required to treat the tax debt on embezzled income as a priority claim because it fell within the section 523(a)(1)(C) exception to priority, Judge Timothy Mahoney stated:

> It is apparent that in the history of Chapter 13 several times a situation has arisen where the discharge of a debt in Chapter 13 resulted in an unfair or unpopular result, and Congress has acted to amend the Bankruptcy Code. Congress has not, however, acted to make claims due for a fraudulent return nondischargeable in Chapter 13. Such inaction is not necessarily inconsistent with the original congressional policy in creating a broader discharge under Chapter 13, which was to encourage debtors to select Chapter 13 and pay creditors something over a number of years, rather than selecting a Chapter 7 liquidation and pay nontax creditors nothing.

*In re Zieg*, 194 B.R. 469, 474 (Bankr. D.Neb.1996) (citing *In re Miller*, 100 B.R. 898, 900 (Bankr.N.D.Ohio 1989) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6078)).

For the reasons stated above, DFA's claims are general unsecured claims not entitled to priority treatment. The objection to confirmation is overruled.

IT IS SO ORDERED.